STATE of Wisconsin, Plaintiff-Respondent,

v.

Bruce T. DAVIS, Defendant-Appellant.

Court of Appeals

*No. 2004AP822–CR. Oral argument December 7, 2005.
—Decided January 24, 2006.*

2006 WI App 23

(Also reported in 710 N.W.2d 514.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Russell D. Bohach* of Milwaukee, with oral argument by *Russell D. Bohach*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Sarah K. Larson*, assistant attorney general, with oral argument by *Sarah K. Larson*.

Before Fine, Curley and Kessler, JJ.

¶ 1. CURLEY, J. Bruce T. Davis appeals from the judgment emanating out of a jury trial convicting him of three counts of burglary, one count of armed robbery, and one count of misdemeanor receiving stolen property, contrary to Wis. Stat. §§ 943.10(1)(a), 943.32(1)(b) & (2), and 943.34(1)(a) (1999–2000).[2] Davis also appeals the order denying his postconviction motions. Davis argues that the trial court erred when, *sua sponte,* it joined the armed robbery charge with the burglary and receiving stolen property charges for trial, and that the trial court erroneously exercised its discretion when it denied his request to introduce evidence that he was mistakenly identified and charged as the burglar in a similar burglary occurring within the same time frame.[3] Because the trial court's analysis that led to the joinder of charges was flawed and its discretionary call concerning the introduction of evidence was an erroneous exercise of discretion, we are satisfied that the real

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[3] This burglary charge was dismissed before the jury trial.

controversy has not been fully tried. Consequently, we exercise our statutory right to a discretionary reversal under WIS. STAT. § 752.35, reverse the judgment of conviction and remand for a new trial.

## I. BACKGROUND.

¶ 2. On March 4, 2001, Davis was charged with five counts of burglary.[4] The burglaries occurred between January 9, 2001, and March 6, 2001. The first burglary, occurring on January 9, 2001 at 2374 North Weil Street, was reported to the police by Jill Christnacht, who told the police that after returning home from work that evening at approximately 7:00 p.m., she observed that a small window on her front door was broken, and upon checking her home for missing property, she noticed that jewelry and numerous CDs had been taken. She then contacted a store selling used CDs and discovered that someone had brought in her unique collection of CDs and sold them. The police went to the store and showed a photo array to the employee who had waited on the man who brought in the stolen CDs. The photo array included a picture of Davis, who had been identified by police as a suspect. The employee picked out Davis's picture as the person who sold the CDs. Blood samples were recovered from the burglary, however, they turned out not to be Davis's. Davis denied ever being in the store or selling any CDs.

¶ 3. The next burglary with which Davis was charged occurred on February 17, 2001. Upon arriving at 305 East Lloyd Street, the police determined that

---

[4] While the complaint was signed on March 4, 2001, the complaint was not filed until April 3, 2001. Davis does not contend that the mis-dating affected any of his rights. *See State v. Dyess*, 124 Wis. 2d 525, 547, 370 N.W.2d 222 (1985).

entry occurred to the upper flat and that entry had been made by prying open the front door and then punching out a piece of plexi-glass on the interior door. Daniel Hartwig, the resident of the upper flat, reported that he returned home at approximately 5:00 a.m. that day and saw the damage, but he was too inebriated to call the police and went to bed. At about 10:15 a.m., he awoke and observed a person, later identified by him as Davis, standing in front of him. Hartwig stated that Davis pretended to be a police officer and to be talking into a police radio. Hartwig then observed Davis pick up Hartwig's pants, remove money and Hartwig's driver's license from a pocket and leave.

¶ 4. The third burglary with which Davis was charged occurred on March 3, 2001. Jason Walton, one of several people living at 1906 East Newberry Boulevard, told the police that he went into the living room of the duplex at approximately 10:30 a.m. and saw a man, later identified as Davis, standing in the living room. Davis told him he was waiting for someone. Later, Davis told Walton that he was leaving to get a soda, and Walton saw Davis leave with some bags similar to those owned by one of his roommates. It was later discovered that numerous items were stolen besides the bags, including some basketball tickets. The police went to the Bradley Center on the day on which the game that corresponded to the stolen tickets was played and asked the person sitting in the seat of one of the stolen tickets where he got the ticket. This person identified Davis from the photo array as the person who sold him the tickets.

¶ 5. The fourth burglary occurred two days later at 1536 North Franklin Place. Dwayne Santner told police that at approximately 9:45 p.m., he walked towards his bedroom and discovered a man, later iden-

tified as Davis, standing by his dresser. When Santner inquired as to what he was doing, Davis told him that, "[t]he little guy with the crew cut let me in." After being told that no one living there matched that description and after another occupant entered the room and confronted Davis, Davis said he had a gun and would use it. He was allowed to leave. No gun was ever seen. Santner discovered that approximately sixty dollars was missing from his room. Santner was shown the photo array by the police and he identified Davis.

¶ 6. The last burglary occurred the next day, March 6, 2001, at 2564 North Pierce Street. There, Kathleen Montanye told the police that at approximately 5:30 p.m., she heard a noise, and, thinking that it was her fiancé, Mark Jurgenson, she went downstairs. Montanye stated that she observed a man in the dining room, later identified as Davis, holding a cardboard box containing her fiancé's tools and some other items. When she asked him what he was doing, Davis said that he was picking up some tools for Mark. When Montanye challenged this explanation and said she was going to call her fiancé, Davis fled with the stolen items. Montanye picked Davis out from a photo array shown to her.

¶ 7. On April 10, 2001, Davis was charged with one count of armed robbery. According to the victims, Joseph Hinnendael and Kevin Mueller, on March 7, 2001, the two roommates were in the living room at 2369 North Booth Street when a man, later identified as Davis, entered the apartment through a partially broken door and offered to sell them several hygiene products which he placed on the table. When the two men told Davis that they had no money, Davis pulled a gun from his waistband, pointed it at Mueller and Hinnendael, and demanded that the two men place

various objects belonging to them, such as a video camera and a PlayStation, into a bag. They complied and Davis left.

¶ 8. After viewing the photo array, many of the victims were asked to view a lineup.[5] At it, Davis was identified by several of the victims. Davis was the only person who was in both the photo array and the lineup. Before trial, the State amended the first count of burglary to misdemeanor receiving stolen property, apparently because of a lack of evidence tying Davis to the burglary. The burglary occurring on February 17, 2001, was dismissed, despite the positive identification by the victim both in a photo array and at a later lineup, after the State verified Davis's claim that he was incarcerated on that date.

¶ 9. At a scheduling conference, the trial court introduced the possibility of joining the two cases for trial. After briefly questioning the lawyers, and over Davis's attorney's objection, the trial court decided to consolidate the two cases. Later, Davis's attorney asked the court to reconsider its decision. This motion was denied. In pretrial motions, Davis sought to call Daniel Hartwig, the victim who had positively identified Davis as the burglar of his house, as a witness. The trial court denied the motion. A jury found Davis guilty of all counts. He was sentenced on the armed robbery count to six years, six months of confinement, to be followed by eight years, six months of extended supervision. On the three burglaries, he was sentenced on count one to three years of confinement, four years of extended supervision; on count two, to four years of confinement, six years of extended supervision; and on count three,

---

[5] There was only one six-man photo array shown to the victims, and only one lineup was held.

to three years of confinement, four years of extended supervision. On the receiving stolen property charge, he was sentenced to nine months of incarceration. All the sentences were ordered to be served consecutively, for a total of sixteen years, six months of confinement, followed by twenty-two years of extended supervision. A postconviction motion was heard and denied. This appeal follows.

## II. ANALYSIS.

¶ 10. Davis raises two issues on appeal. First, he claims that the trial court erred in deciding, *sua sponte,* to join the burglary and receiving stolen property charges with the armed robbery charge for trial. He argues that joinder was inappropriate because the charges did not meet the test for joinder set forth in WIS. STAT. § 971.12, and that the joinder of the cases was extremely prejudicial to him. Second, he argues that the trial court erroneously exercised its discretion in denying his request to introduce the testimony of Daniel Hartwig, the victim of a dismissed burglary charge, who identified Davis as the burglar, despite the fact that Davis was incarcerated at the time. Davis's defense to the charges was that the victims mistakenly identified him and that another person looking like him committed all of the crimes. He wanted to call Hartwig to show that there was irrefutable proof that at least one of the victims misidentified him.

¶ 11. The State counters that joinder was appropriate and, in any event, any error was harmless because the trial court gave a curative instruction and there was overwhelming evidence of Davis's guilt introduced at trial. As to the evidentiary issue, the State contends that the trial court properly exercised its discretion, and

further, that the State would have been unfairly prejudiced if Hartwig had been allowed to testify.

¶ 12. We first address the joinder issue. With respect to joinder, Wis. Stat. § 971.12(1) provides, in relevant part that:

> Two or more crimes may be charged in the same complaint . . . in a separate count for each crime if the crimes charged . . . are of the same or similar character or are based on the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common scheme or plan.

¶ 13. "To be of the 'same or similar character' under sec. 971.12(1), Stats., crimes must be the same type of offenses occurring over a relatively short period of time and the evidence as to each must overlap." *State v. Hamm*, 146 Wis. 2d 130, 138, 430 N.W.2d 584 (Ct. App. 1988) (citing *State v. Hoffman*, 106 Wis. 2d 185, 208, 316 N.W.2d 143 (Ct. App. 1982)). "It is not sufficient that the offenses involve merely the same type of criminal charge." *Id.* "Whether charges are properly joined in a criminal complaint is a question of law." *Id.*

¶ 14. In *Francis v. State*, 86 Wis. 2d 554, 560–61, 273 N.W.2d 310 (1979), our supreme court approved of joinder where the charges "involved two or more incidents which exhibited the same modus operandi, were close in time, and occurred within the same geographic area, the acts were connected or constituted parts of a common scheme or plan which tended to establish the identity of the perpetrator." *Hamm*, 146 Wis. 2d at 138–39 (citing *Francis*, 86 Wis. 2d at 560–61). There, the court held that because the evidence of each crime would be admissible in separate trials for each, joinder was proper under Wis. Stat. § 971.12(1). *Francis*, 86 Wis. 2d at 561.

¶ 15. With that background in mind, we next examine the trial court's reasoning when it determined that joinder was appropriate. At a hearing on July 20, 2001, the trial court assumed that the addresses of the armed robbery and the burglaries were all in the same neighborhood. In addition, the trial court believed that no personal hygiene products were ever displayed to the victims of the armed robbery, and that the robber's claim that he had products to sell was a ruse.

> In this case, I understood that the rouse [sic] was to sell hygiene products which Mr. Davis said he had in the bag. At some point, Mr. Davis formed the intent to rob one of the people who was present at North Booth Street on March 2nd, 2001 and then left without having displayed hygiene products.

¶ 16. The trial court's assumption that the crimes all occurred in the same neighborhood was not entirely correct. While the burgled residences and the site of the armed robbery were all on the east side of Milwaukee, the Franklin Place address lies several blocks south of Brady Street, and is located on the other side of the Milwaukee River, some distance from the Riverwest neighborhood where one of the burglaries and the armed robbery occurred. The Newberry Boulevard burglary occurred in a different neighborhood altogether, approximately one mile from the Franklin Place burglary and across the river from the Riverwest neighborhood.

¶ 17. As to the personal hygiene products, contrary to the trial court's belief, the products were shown to the victims. This is important because the trial court believed that the armed robbery had started out as a burglary, and when the burglar discovered people in the home, the robber came up with a story to account for his presence.

409

It seems to me that if there was evidence that the armed robbery on March 7th, 2001 grew out of a foiled burglary attempt when Mr. Davis discovered that the residents of the house were home, that that would be an appropriate basis for consolidation. The fact that Mr. Davis had no hygiene products to sell is suggestive of his stating that as a guise to explain his presence at the house at 2369 North Booth Street.

The trial court then concluded:

I'm satisfied that the inference can be drawn that his presence was unexplained at 9:45 p.m. and he had to come up with this pretext of selling personal hygiene products in order to explain why he was standing at their door, and he rolled with the punches and decided to pull his gun out and rob them when he saw property in the apartment that caught his eye. I'm going to order the cases consolidated under Section 971.12 so that they can be tried before a single jury.

¶ 18. However, because the robber displayed hygiene products, and it was only after the victims indicated that they had no money with which to buy the items that a gun was brandished, the trial court's theory has been undermined. Consequently, contrary to the court's opinion, the modus operandi for the armed robbery – an announced entry into the apartment for the purpose of selling items and stealing the property of others at gunpoint – was quite distinct from that of the three charged burglaries where the mode of entry was unknown, no weapons were ever displayed, and the burglar fled with stolen items, sometimes before they were even discovered missing. In addition, despite the assistant district attorney's initial statement to the trial court that the crimes were all committed during the day, in fact the burglaries and the armed robbery occurred at different times of the day and night. More-

410

over, it appears that the trial court analyzed the joinder issue under the belief that the existence of overlapping evidence was unnecessary because the trial court believed that the armed robbery and the burglaries were similar, a legal conclusion with which, as we have already stated, we do not agree.

¶ 19. The trial court explained:

> A judge can consolidate under Section 971.12 any cases where there is overlapping evidence or cases which are categorically similar, even if there is no overlapping evidence. Wisconsin has only considered the consolidation of cases where there is overlapping evidence. *State [v.] Hamm, . . .* is the leading case in Wisconsin considering consolidation where evidence is overlapping. *State [v.] Hamm* appears at 146 Wis.2d 130.
>
> The federal courts, when construing Rule 14 of the Federal Rules of Criminal Procedure and Rule 8 of the Federal Rules of Criminal Procedure dealing with a joinder of crimes and severance, have noted that consolidation is appropriate where there is a categorical similarity between the offenses, even if there is no overlapping evidence.

Thus, in reaching its initial conclusion that consolidation of the two cases was warranted, the trial court incorporated and relied on several factual errors.

¶ 20. Later, the trial court addressed the joinder issue a second time when Davis's attorney asked the court to reconsider its earlier decision. The trial court again inaccurately stated that all the burglaries occurred in the same neighborhood: "The similarity I'm focusing on is, we've got three burglaries and [one] robbery within a five day period, all within the same neighborhood. That indicates that a burglar, robber, is

as busy as they can be." However, as noted, Franklin Place is not in the same Riverwest neighborhood where Booth and Pierce Streets are located, and neither is Newberry Boulevard. Consequently, the trial court relied on incorrect information when declining to change its ruling:

> Well, I'm satisfied that for whatever reasons, the robber on March 7th of 2001 chose to start talking when the door was answered and only later formed the intent to rob the people at North Booth Street when he saw an opportunity to do so.
>
> I do conclude, that given the time frame of the burglaries and the robbery in the usual guise to see if anybody is home before a burglary is attempted, that there is a basis for joinder, so your request to reconsider the ruling on joinder is denied.

Again, the trial court's decision to join these two matters for trial was based on factual errors. The burglaries were not all committed in the same neighborhood, and the armed robber displayed personal hygiene products, suggesting that it was not a burglary-gone-bad as the trial court thought. As a result, the modus operandi was different for the armed robbery, and thus, there is no evidence of a common scheme between the burglaries and the armed robbery charge. *Cf. Francis*, 86 Wis. 2d at 561. Moreover, given the correct facts, it is unlikely that the armed robbery would have been admissible as other acts evidence in a trial of the burglary charges. Consequently, the trial court's decision to try these matters together rests on very shaky ground, as the actual facts were contrary to the trial court's beliefs.

¶ 21. We also cannot find that the trial court's joinder decision was harmless error.

We hold that misjoinder of offenses in some circumstances may be harmless. "Such a policy is acceptable and even desirable when harmlessness is demonstrated by overwhelming evidence of guilt or when the court is convinced for other reasons that 'the error did not influence the jury or had but very slight effect.' Defendants will suffer from the application of [the harmless error rule] to [misjoinder] only if, in the name of 'efficiency,' the doctrine is not carefully and strictly construed."

*State v. Leach*, 124 Wis. 2d 648, 671–72, 370 N.W.2d 240 (1985) (citation omitted; alteration by *Leach*).

The test to be applied for considering harmless error was just stated by this court in *State v. Dyess*, 124 Wis. 2d 525, 370 N.W.2d 222, filed this same date, accepting *Strickland v. Washington*, 104 S. Ct. 2052 (1984), as there is no reasonable possibility that the error contributed to the conviction.

*Id.* at 674 (footnote omitted).

¶ 22. The only evidence connecting Davis to the crimes were separate eyewitness identifications. No stolen goods were found in Davis's house or on his person. No blood stains, fingerprints or clothing tying him to the crimes were ever recovered. In addition, the initial descriptions given to the police were quite varied. For example, the victims of the armed robbery told the police that the robber was in his early 20's, but Davis was 35 years old at the time of trial. Another one of the victims said the burglar had dark blotches on his face. However, Davis had no visible skin discolorations. Further, all of the victims saw the same six photos and the same lineup, and the only person in both the photo array and the lineup was Davis, thus raising the possibility that the identifications were potentially suggestive. Consequently, there was no overwhelming evi-

dence of guilt submitted at trial. Moreover, Davis was likely unfairly prejudiced by the joinder, as Davis's attorney argued to the court:

> To have all of these matters brought together would be all witnesses sitting together in one location. And I believe that my client – it is much more likely that my client would be found guilty of the armed robbery – the burglaries or the armed robbery because of the connection and the identification of the others.

> We've already seen that one of the positive identifications made at the preliminary hearing on the basis of what [the assistant district attorney] has said was absolutely wrong because my client was in a place where he could not have been where this individual said he was. He was in Racine Correctional Institution.

We agree. The submission of the armed robbery charge along with the burglary charges greatly enhanced Davis's chances of being found guilty of the armed robbery charge. Further, the curative instruction given by the court was not sufficient to eliminate the potential prejudice. So, for all of the aforementioned reasons, we cannot find that the joinder constituted harmless error.

¶ 23. Next, Davis argues that the trial court erroneously exercised its discretion when it denied his request to call the burglary victim, who misidentified Davis as the burglar, to testify. He argues that the trial court failed to conduct a proper analysis under *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998), and, had a proper analysis been conducted, it would have resulted in this witness being allowed to testify. The State counters that the trial court implicitly applied the proper test and that the trial court correctly determined that the witness was irrelevant. The State also

414

submits that introduction of evidence of a misidentification would have been unfairly prejudicial to the State. We are not persuaded.

¶ 24. Several constitutional rights are implicated in criminal trials which affect the introduction of evidence. Criminal defendants have a right to be heard and to present witnesses. "The opportunity to be heard includes the right to 'present a complete defense.'" *Brown County v. Shannon R.*, 2005 WI 160, ¶ 65, 286 Wis.2d 278, 706 N.W.2d 269 (citing *California v. Trombetta*, 467 U.S. 479, 485 (1984)). "The right to present a complete defense, in turn, includes the right to offer the testimony of witnesses." *Id.* (footnote omitted). However, "[t]he constitutional right to be heard is not so broad as to preclude the State from establishing rules of evidence and procedure that impose limits on a party's ability to present evidence . . . ." *Id.*

¶ 25. The standard of review for a trial court's decision to admit evidence is whether the trial court misused its discretion. *State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498 (1983). The question then is whether the trial court exercised its discretion in accordance with accepted legal standards and the facts of record. *Id.*

¶ 26. Accordingly, we look to see whether the rules of evidence prevented Davis from presenting his defense. *Sullivan*, 216 Wis. 2d 768, is the seminal case for the admission of "other acts" evidence. In it our supreme court set forth a three-step test for the admission of such evidence. The three-step analytical framework is as follows:

(1) Is the other acts evidence offered for an acceptable purpose under Wis. Stat. § (Rule) 904.04(2), such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident?

(2) Is the other acts evidence relevant, considering the two facets of relevance set forth in Wis. Stat. § (Rule) 904.01? The first consideration in assessing relevance is whether the other acts evidence relates to a fact or proposition that is of consequence to the determination of the action. The second consideration in assessing relevance is whether the evidence has probative value, that is, whether the other acts evidence has a tendency to make the consequential fact or proposition more probable or less probable than it would be without the evidence.

(3) Is the probative value of the other acts evidence substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence? *See* Wis. Stat. § (Rule) 904.03.

*Id.* at 772–73 (footnote omitted).

¶ 27. While early on Davis argued that Hartwig's testimony should be admitted to explore possible poor police tactics surrounding the identification, later his attorney argued that he wanted the evidence admitted for identification purposes, for the purpose of showing that the crimes were committed by another.

¶ 28. Looking at the first factor, the State concedes that this witness's testimony was offered for identification purposes, an admissible purpose under Wis. Stat. § 904.04(2). As to the second *Sullivan* factor, the misidentification of Davis as the burglar, under circumstances similar to those of the other burglaries,

relates to a fact that was of consequence to the jury's determination and was relevant. This is not a situation where someone accused of a crime makes a general claim that someone else must have done it. Rather, here we have a burglary victim who twice misidentified Davis as the person he saw in his apartment. This fact provided Davis with the opportunity to attempt to prove that someone else, someone who looks a great deal like Davis, was burglarizing and robbing homes within the same general time frame. Indeed, the State originally charged Davis with the Hartwig burglary in the same complaint as the other burglaries. Consequently, this evidence was of great probative value. Thus, a proper *Sullivan* analysis would have shifted the balance in favor of admitting the evidence.

¶ 29. Finally, with respect to whether the State would have been prejudiced, the State argued that:

> Here, the State would have been prejudiced by the injection of collateral testimony from Daniel H. relating to a dismissed burglary charge that was not being tried with the rest of the burglaries. The Daniel H. evidence would have spawned jury speculation about why the Daniel H. burglary was not being prosecuted at the same time, or caused an undue diversion by injecting the collateral – and confusing – issue of an unknown perpetrator of an unknown burglary that was not being submitted to the jury.

We disagree. This evidence would not have unfairly prejudiced the State.

¶ 30. There is little chance that this witness would have caused an undue diversion or would have confused the jury. The proposed witness's testimony went to the heart of the dispute. The State contended that Davis committed all the charged crimes. Davis

claimed someone else committed them. Indeed, proof that a victim misidentified Davis and that Davis had previously been charged with burglary was significant in determining the identification issue. Moreover, while admitting this evidence may have changed the result of the trial, under our system of law, the State is charged with the duty of seeking justice, not simply obtaining convictions. Making sure that the truly guilty are convicted is tantamount to doing justice. We do not believe the State would have been unfairly prejudiced by the admission of this evidence, evidence that satisfied the *Sullivan* test and was the foundation of Davis's defense. Thus, the trial court erroneously exercised its discretion when it denied Davis's motion to call Hartwig as a witness. As a result, we are satisfied that the real controversy has not been fully tried, and we exercise our statutory right under Wis. Stat. § 752.35 to reverse the judgment of conviction and remand for a new trial.

*By the Court.*—Judgment and order reversed and cause remanded.

¶ 31. FINE, J. (*concurring*). I fully join in the Majority opinion, except its discussion of Wis. Stat. Rule 904.04(2), which, in my view, has nothing to do with this appeal.

¶ 32. Wisconsin Stat. Rule 904.04 reads:

**(1)** Character evidence generally. Evidence of a person's character or a trait of the person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

(a) *Character of accused.* Evidence of a pertinent trait of the accused's character offered by an accused, or by the prosecution to rebut the same;

(b) *Character of victim.* Except as provided in s. 972.11(2), evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

(c) *Character of witness.* Evidence of the character of a witness, as provided in ss. 906.07, 906.08 and 906.09.

(2) OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Thus, the rule permits, *via* subsection (2), the admission of evidence relating to "character" if its primary purpose is to prove something other than propensity. One of these other primary purposes is to prove the "identity" of the defendant as the person who committed the crime or crimes charged. *See, e.g., State v. Speer,* 176 Wis. 2d 1101, 1117, 501 N.W.2d 429, 434 (1993) ("To be admissible for the purpose of identity, similarities must exist between the 'other act' and the offense for which the defendant is being tried."); *State v. Sullivan,* 216 Wis. 2d 768, 786–787, 576 N.W.2d 30, 38–39 (1998) ("The stronger the similarity between the other acts and the charged offense, the greater will be the probability that the like result was not repeated by mere chance or coincidence. In other words, '[I]f a like occurrence takes place enough times, it can no longer be attributed to mere coincidence. Innocent intent will

become improbable.' ") (quoted source and footnote omitted).

¶ 33. When a *defendant* seeks to introduce other-acts evidence to show that someone else committed the charged crime or crimes, the pattern must show a sufficient similarity "between the other act evidence and the charged crime," so that the evidence tends to substantiate the defendant's contention, although when offered by the defendant rather than the State it need not rise to the level of establishing an " 'imprint' or 'signature.' " *State v. Scheidell*, 227 Wis. 2d 285, 304–305, 307, 595 N.W.2d 661, 671, 672 (1999) (applying "relevance" criterion discussed by *Sullivan*, 216 Wis. 2d at 785–787, 576 N.W.2d at 38–39). As the Majority recognizes in ¶ 28, however, "[t]his is *not* a situation where someone accused of a crime makes a general claim that someone else must have done it." (Emphasis added.) Indeed, as the Majority shows, the various crimes, including the one that victimized Daniel Hartwig, were not so similar to permit their joinder because the evidence of one or more would not be cross-admissible under WIS. STAT. RULE 904.04(2). *See Francis v. State*, 86 Wis. 2d 554, 559–561, 273 N.W.2d 310, 313–314 (1979) (similarity in *modus operandi* permits joinder because "[t]he evidence of each crime would be admissible at separate trials for each crime").

¶ 34. Thus, the "identity" aspect of WIS. STAT. RULE 904.04(2) and the *Sullivan* three-step approach do not come into play.

> Rather, here we have a burglary victim who twice misidentified Davis as the person he saw in his apartment. This fact provided Davis with the opportunity to attempt to prove that someone else, *someone who looks a great deal like Davis,* was burglarizing and robbing homes within the same general time frame.

Majority, ¶ 28 (emphasis added). I agree. Davis was entitled to have the jury learn that there was someone who looked so much like him that Hartwig believed that person was Davis, even though that was impossible. This is not, however, a RULE 904.04(2) case.