COURT OF APPEALS
DECISION
DATED AND FILED

October 12, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP634-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2013CF130

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

NICOLAS J. AVINA, JR.,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Sheboygan County: ANGELA W. SUTKIEWICZ, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Nicolas J. Avina, Jr. appeals a judgment of conviction for two counts of burglary as a repeater, as well as an order denying his motion for postconviction relief. Avina argues the circuit court erred and violated his right to present a defense when it prohibited Avina from using a surveillance video during the cross-examination of a manager of one of the clubs Avina burglarized. He also raises seven assertions of constitutionally ineffective assistance by his trial counsel relating to the defense of the two burglary charges. We reject Avina's arguments and affirm.

## BACKGROUND

¶2 Avina was charged and convicted of two Sheboygan burglaries. More than $1,000 in cash had been taken from bank bags containing the money from gambling machines at Club Michigan on December 16, 2012. Nearly two months later, more than $6,000 was stolen from Frankie's Bar. The burglaries were captured on surveillance video, and a Department of Corrections inquiry about the physical description of the suspect led police to Avina. Police discovered he had ties to both of the locations, including his being physically present at Frankie's Bar the day before the burglary, when he inquired about gambling machine payouts and the location of surveillance cameras. The circuit court sentenced Avina to consecutive eight-year sentences, each consisting of six years' initial confinement and two years' extended supervision.

¶3 Avina filed a motion for postconviction relief. As grounds, he raised the seven instances of ineffective assistance of counsel he now raises on appeal.[1]

---

[1] The motion included other claims which Avina has since abandoned.

The circuit court scheduled a *Machner* hearing,[2] but Avina's trial counsel unexpectedly passed away. As a result, the only individuals to testify were Avina, a footwear expert from the Wisconsin State Crime Lab, and a police investigator. The circuit court denied the motion, and Avina now appeals.

## DISCUSSION

¶4 The issues Avina raises on appeal generally fall into two categories. First, Avina argues he is entitled to a new trial based upon a limitation the circuit court imposed regarding the cross-examination of Club Michigan's manager. Second, Avina alleges that his trial attorney was constitutionally ineffective in a variety of ways relating to: (1) the joinder of the burglary charges; (2) counsel's failure to present alibi evidence; (3) counsel's failure to impeach the credibility of certain of the State's witnesses; and (4) counsel's failure to object to the admission of money found in Avina's possession. We reject each of these arguments for the reasons that follow.

### I. Limitation on Cross-Examination

¶5 At the time of the Club Michigan burglary, Avina was dating Brittany Stewart, a bartender at the club who lived above it. Stewart was one of six individuals with a key to the club. At trial, the club manager, Michael Wagner, testified that he realized immediately when he got to work that something was amiss because the front door was unlocked. He was certain he had locked it when he left at closing.

---

[2] *See* ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

¶6      During recross-examination, Avina's trial counsel asked whether Wagner could look at surveillance video to verify whether he had locked the front door when he left. Wagner responded that he had done so, at which time Avina's attorney requested to be heard outside the jury's presence. Avina's attorney then conducted voir dire regarding Wagner's viewing of the surveillance video.

¶7      Wagner testified that he initially told police he could not remember if he had locked the front door when he left at closing. Unbeknownst to the State or Avina, after the police interview Wagner had watched surveillance video of himself closing up to verify he had locked the door. Wagner testified that because of the angle of the camera, he could not be seen turning the key, but he could be seen pulling on the door to make sure it was locked.

¶8      Based on this testimony, Avina's attorney requested that the jury be allowed to watch the surveillance video Wagner had referenced. But that video had been long deleted; the State did not know about it, and had preserved only surveillance video of the burglary itself. Avina's attorney then suggested that he be allowed to cross-examine Wagner using the surveillance video of the perpetrator entering the door, with the intention of demonstrating "whether or not the jury may believe it is reasonable that [Wagner] could see his arm move locking that door, even though you can't see the inside of the alcove at all." The court refused to allow that line of questioning because it would confuse the jury.

¶9      Avina argues the surveillance video of the perpetrator entering the club "works to contradict the manager's assertion" that he had viewed himself on the video pulling on the door to make sure it was locked. Accordingly, Avina regards the playing of the video during cross-examination as highly probative evidence of Wagner's truthfulness. He contends that being prevented from cross-

examining Wagner using the video was inconsistent with the rules of evidence and denied Avina of evidence critical to his defense.[3]

¶10    Even assuming it was error to deny Avina of the ability to use the perpetrator surveillance video during Wagner's cross-examination, that error was harmless. An error is harmless if it is beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. *State v. Moore*, 2015 WI 54, ¶94, 363 Wis. 2d 376, 864 N.W.2d 827; *see also* WIS. STAT. § 805.18(1) (2019-20).[4]  Whether an error is harmless is a question of law that we review de novo.   Moore, 363 Wis. 2d 376, ¶54.

¶11    Though the circuit court barred the use of the perpetrator surveillance video during Wagner's cross-examination, the video was admitted into evidence and shown to the jury twice:  once during testimony by a police witness and once during the defense closing argument. Despite not being able to display the video during Wagner's cross-examination, Avina was able to attack Wagner's credibility relating to Wagner's testimony that he watched the surveillance video of himself.  Avina did so both during cross-examination through extensive questioning about the location of the camera, and during closing arguments, when he criticized Wagner's "bizarre explanation about how he checked the door" and commented, "It doesn't make sense that Wagner claims he went back, looked at the video and educated himself."  We are confident beyond a

---

[3] Avina's assertion that the limitation on Wagner's cross-examination deprived him of critical defense evidence is conclusory and undeveloped. Even so, as set forth below, we would reject it on the basis that the evidence adduced at trial was sufficient for Avina to challenge Wagner's credibility, which he did.

[4] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

reasonable doubt that any error stemming from the limitation upon Wagner's cross-examination did not affect the verdict.

## II. Ineffective Assistance of Counsel

¶12    The Sixth Amendment guarantees a defendant the effective assistance of counsel. *State v. Savage*, 2020 WI 93, ¶27, 395 Wis. 2d 1, 951 N.W.2d 838. To prevail on an ineffective assistance claim, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Id.* We review an ineffective assistance of counsel claim using a mixed standard of review. *Id.*, ¶25. The circuit court's factual findings, including those regarding trial counsel's conduct and strategy, will not be overturned unless they are clearly erroneous, but we review de novo whether counsel's conduct constitutes constitutionally ineffective assistance. *Id.* If the defendant fails to establish either prong, we need not address the other. *Id.*

¶13    To demonstrate deficient performance, the defendant must show that his or her attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.*, ¶28; *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). We presume that counsel's conduct fell within the wide range of reasonable professional assistance, and we will grant relief only upon a showing that counsel's performance was objectively unreasonable under the circumstances. *Savage*, 395 Wis. 2d 1, ¶28. Prejudice is demonstrated by showing a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Id.*, ¶32.

*A. Joinder of Charges*

¶14    Avina first argues the two burglary charges were improperly joined and his trial counsel was therefore deficient for failing to seek to sever them. For the reasons the State sets forth, we focus our analysis only on the joinder statute, WIS. STAT. § 971.12. As relevant here, that statute permits joinder when the two acts are of "the same or similar character," or when the charges are based on two or more acts or transactions that are connected together. Sec. 971.12(1). "The joinder statute is to be broadly construed in favor of initial joinder." ***State v. Salinas***, 2016 WI 44, ¶31, 369 Wis. 2d 9, 879 N.W.2d 609.

¶15    Joinder was proper here under both aspects of WIS. STAT. § 971.12(1) identified above. Crimes are "the same or [of a] similar character" when they are the same type of offense, occur over a relatively short period of time and feature overlapping evidence. ***State v. Davis***, 2006 WI App 23, ¶13, 289 Wis. 2d 398, 710 N.W.2d 514. As the State argues, the crimes were burglaries that occurred within a few months of one another, and Brittany Stewart was a key witness in both instances.

¶16    Additionally, the charges were based on two acts that were connected together pursuant to the factors identified in ***Salinas***, 396 Wis. 2d 9, ¶43. The two burglaries occurred in close temporal and geographic proximity to one another, the evidence implicating Avina in each burglary involved some of the same witnesses, some factual aspects of the crimes were similar, and Avina's suspected involvement in the Frankie's Bar burglary arose in part because he was a named suspect in the Club Michigan burglary.

¶17    Because joinder of the two burglary charges was proper under WIS. STAT. § 971.12, we conclude trial counsel did not perform deficiently by failing to seek to sever the charges based on improper joinder.

### B. Alibi Evidence

¶18    Avina next argues his trial counsel was constitutionally ineffective for failing to present evidence regarding his purported alibis for both burglaries. We conclude Avina's trial counsel did not perform deficiently in either instance.

### 1. Club Michigan

¶19    First, Avina suggests his trial attorney was deficient for failing to question Stewart about a receipt purportedly showing he was at McDonald's at the time of the Club Michigan burglary. Stewart testified she and Avina awoke on the morning of the burglary at approximately 6:00 a.m. Avina showered and left in Stewart's car with her keys; Stewart estimated he was gone for more than 45 minutes. When Avina returned, he had McDonald's food and told Stewart he was at his mother's residence. When police later questioned Stewart, she noted the timestamp of the surveillance video showing the burglary occurred at approximately 7:21 a.m., and she told officers she had found a McDonald's receipt in her car for that time and date.

¶20    Avina argues the receipt demonstrated he had an alibi for the Club Michigan burglary and his attorney should have done more at trial to prove up the alibi defense, including asking additional questions of Stewart and of law enforcement witnesses regarding why the receipt was not collected. However, both Stewart and the officer who reviewed the surveillance video testified that the timestamp on the footage was incorrect. Although Avina believes this was merely

speculation on the officer's part, the evidence does not support a conclusion that the receipt established a persuasive alibi.[5] Accordingly, we conclude trial counsel did not perform deficiently by failing to more thoroughly examine the issue of the missing receipt.

### 2. *Frankie's Bar*

¶21 Next, Avina suggests his trial counsel was deficient for failing to demonstrate at trial that Avina could not have perpetrated the burglary at Frankie's Bar because phone records showed he sent text messages around the same time as timestamped surveillance video showed the burglary being committed. Avina argues the surveillance video footage gave no indication that the perpetrator was using a phone at the time. We reject his ineffective assistance claim because Avina's attorney elicited testimony regarding the timing of the text message and made precisely this argument at trial. We perceive no deficiency relating to Avina's trial counsel's handling of the purported alibi evidence.

---

[5] Avina argues in his reply brief that "[n]obody from the business said [the timestamp of the surveillance video] was off." This is not correct. Stewart, who was employed by Club Michigan at the time of the burglary, testified that Wagner, the club manager, told her the timestamp on the surveillance video was incorrect.

Relatedly, the appellate record citations Avina provides in his reply brief for the police testimony about the surveillance video timestamp are incorrect; the correct record number for the transcript is 326, not 324. There, on page 193, Avina's counsel interposed the same objection at trial that Avina now raises, that it was mere speculation for the officer to testify that he believed the Club Michigan surveillance timestamp was incorrect based on the lighting conditions at the time. That objection was overruled at trial, and we see no basis to second-guess that determination in our consideration of an ineffective assistance of counsel claim.

### C. Impeachment of the State's Witnesses

¶22    Avina also argues his attorney was constitutionally deficient when questioning several of the State's witnesses: (1) Ray Potter, an inmate who testified that Avina had confessed to burglarizing Club Michigan while they were imprisoned together; (2) Carlos Williams, the cook at Frankie's Bar who was initially suspected in the burglary; and (3) the State's footwear expert, Melissa Graf, who analyzed shoe impressions found at Frankie's Bar and compared them to shoes seized from Avina.  In each instance, we conclude Avina's trial counsel did not perform deficiently.

#### 1. Ray Potter

¶23    Avina's argument primarily revolves around a recorded telephone call from Stewart to Avina while he was incarcerated, during which call Stewart twice read Avina the search warrant for their residence.  The warrant described the clothing that police were looking for.  Avina contends his trial counsel should have used the recording itself during Potter's cross-examination to posit an alternate source for Avina's knowledge (and therefore Potter's knowledge) of the clothing worn in the burglaries beyond the notion that Avina had committed the burglaries, as argued by the State.

¶24    We conclude trial counsel did not perform deficiently.  Potter was cross-examined and acknowledged that he overheard Avina talking on the phone about the things that were listed on the search warrant.  Thus, the relevant facts were presented to the jury about a source of alternate knowledge, even if the recorded telephone call itself was not.  Additionally, Avina's trial counsel elicited the testimony of other inmates who were present with Avina and Potter during the

10

relevant time; they denied Potter's claim that Avina had confessed. Counsel conducted a constitutionally adequate impeachment of Potter's testimony.

### 2. *Carlos Williams*

¶25 Next, Avina argues his trial counsel did not sufficiently impeach Carlos Williams, the Frankie's Bar cook who was initially suspected in that burglary. Avina argues that the statement Williams gave police following the burglary was inconsistent with his trial testimony and with police observations contained in a search warrant affidavit. We conclude Avina's trial counsel provided constitutionally adequate representation in his efforts to impeach Williams.

¶26 At trial, a police witness testified, "The information that [Williams] provided on the stand was not very consistent with what he told me on that day." Moreover, though Williams claimed (both in his statement to police and at trial) that he and his wife were at a movie and then went home on the night of the burglary, the police witness testified the movie was shown during a time that did not exclude his involvement in the burglary. And defense counsel was able to get Williams to acknowledge that just prior to the burglary the manager had changed Williams's pay from salaried to hourly and he was having difficulty making ends meet. Williams's wife testified on cross-examination that she was upset with the pay change and that the couple went to bed around midnight or 1:00 a.m. on the night of the burglary—which, as Avina points out on appeal, would not have excluded Williams as a perpetrator if he snuck out after his wife went to sleep.

¶27 Avina asserts his counsel should have made additional efforts to demonstrate that Williams was not honest with law enforcement during his initial

interview. Perfection is not the standard for constitutionally adequate representation. *State v. Thiel*, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305. The evidence the jury had before it was sufficient for the jury to make an assessment of Williams's credibility vis-à-vis his denial of involvement in the burglary.

### 3. Melissa Graf

¶28 Graf, a forensic scientist employed by the Wisconsin State Crime Laboratory to analyze footwear impressions left at crime scenes, testified that she had analyzed several shoes to determine whether they matched the impressions left at Frankie's Bar. Graf testified that she excluded several impressions, but the shoes seized from Avina could have left some of the impressions at Frankie's Bar based upon their outsole design and size. However, none of the shoes had any distinctive identifying trait (such as a rip or crack in the tread) that allowed her to form an opinion that the particular shoe left a specific impression.

¶29 On that last point, Avina argues his trial counsel should have objected to a specific portion of Graf's testimony, or engaged in more extensive cross-examination based upon her statement. This assertion appears to be based on misconceptions about the testimony or idiosyncrasies in the questioning, such as the prosecutor's use of the word "would" as opposed to "could."[6] Even if there was some arguable initial confusion about Graf's testimony during direct examination, she gave clarifying testimony during the course of cross, redirect,

---

[6] The specific question the prosecutor asked, which Avina now claims his attorney should have objected to, was: "So, again, bottom line, your conclusion to a reasonable degree of scientific certainty is that some of the shoes would have left the prints but we can't say for sure which since there is nothing unique about them?"

and recross. Reviewing the entirety of Graf's testimony, we agree with the State that it cannot be reasonably construed as suggesting that Avina's shoes definitely left the impressions found at the scene. As such, Avina's trial counsel was not constitutionally required to delve further into the matter.

### D. Admissibility of Money Found in Avina's Residence

¶30 During a search of Avina's residence, police seized an envelope labeled "rent" containing $400 and Avina's wallet. At trial, a photograph of the wallet and its contents—including $470—was admitted into evidence.

¶31 Meanwhile, the State also attempted to admit into evidence text messages Avina sent to his ex-girlfriend in which he told her that he wanted her to leave him alone after he paid her "because you keep saying you gonna' snitch on me." Avina's trial counsel objected to the admission of that text message because the "snitching" reference had also been used by the State in a drug prosecution against Avina. The circuit court concluded that portion of the text message was inadmissible under WIS. STAT. § 904.03 because it had previously been used to suggest that the snitching referred to drug activity and therefore its probative value was substantially outweighed by the danger of unfair prejudice.

¶32 Avina now argues the same rationale warranted an objection to the wallet and its contents, which had also been admitted into evidence at the drug trial. As the circuit court recognized in its postconviction decision, though, the

13

money might be evidence of more than one criminal act.[7] The presence of unexplained sums of money in Avina's possession—he was not working at the time—could be considered relevant, probative evidence of ill-gotten gains, be it by illegal drug sales, burglary, or both. Because we cannot conclude a WIS. STAT. § 904.03 objection was warranted, we conclude Avina's trial counsel did not perform deficiently on this ground.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5

---

[7] This is probably true of the text message as well; the reference to "snitching" could conceivably have applied to both drug activity and burglary. Nonetheless, defense counsel successfully obtained a favorable ruling based upon the notion that duplicative use of the text message was unfair. But that ruling does not necessarily establish that the wallet evidence was inadmissible or that the court would have granted a motion in limine to exclude that evidence, and therefore it also does not establish that trial counsel was constitutionally ineffective for failing to challenge the wallet's admissibility based on its use in the prior trial.