The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Richard Lewis ARMSTRONG,
Defendant-Appellant.

No. 84CA0587.

Colorado Court of Appeals,
Div. I.

June 27, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Solicitor Gen., Cynthia D. Jones, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Philip W. Ogden, Colorado Springs, for defendant-appellant.

ENOCH, Chief Judge.

Defendant, Richard Armstrong, appeals from a judgment of conviction entered on a jury verdict finding him guilty of aggravated robbery, conspiracy to commit aggravated robbery, and commission of a violent crime. We affirm.

Late in the evening of July 26, 1983, Amy Johnson was the last employee to leave Furr's cafeteria in Colorado Springs. When she unlocked the exit door, two black men who had been waiting outside grabbed her and forced her back inside. They pushed her to the floor, held a gun to her head, and threatened to kill her if she did not open the safe. She complied and the robbers removed its contents and fled.

Five months later a detective from the Colorado Springs Police Department contacted defendant, who had been incarcerated on another matter, in the interview room of the El Paso County Jail. The detective initiated the conversation by stating that he was investigating two robberies; one at Furr's, and one at the Smuggler's Inn. The detective indicated that a man named David Thurman had told him defendant had been involved in the robberies. Defendant stated that he had not been involved in the Smuggler's Inn robbery. The detective then advised defendant of his *Miranda* rights, which defendant stated he understood. After this advisement, defendant agreed to discuss the Furr's robbery and admitted that he and Thurman had committed the robbery. He provided the detective with a detailed description of what had occurred.

### I.

Defendant contends that the court erred in denying his motion to suppress his statements made to the detective after *Miranda* warnings. He argues that the statements were tainted by the pre-*Miranda* conversation. We disagree.

In *People v. Harris*, 703 P.2d 667 (Colo. App.1985), we held that a suspect's uncoerced, voluntary response to pre-*Miranda* questioning did not thereafter disable him from waiving his rights and voluntarily confessing, after proper *Miranda* warnings had been given. *See also Oregon v. Elstad*, —— U.S. ——, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). Under *Oregon v. Elstad, supra*, the relevant inquiry to be made in determining whether the post-*Miranda* statements are admissible is whether they were voluntarily made. The voluntariness may be ascertained by examining the surrounding circumstances and the entire course of police conduct with respect to the suspect. *People v. Harris, supra*.

Here, defendant's initial statement, although in violation of *Miranda's* procedural safeguards, was voluntary. Defendant concedes that he then waived his *Miranda*

rights and agreed to talk to the detective. There is nothing in the circumstances surrounding the post-*Miranda* statements to indicate that they were not voluntarily made, and the fact that a suspect chooses to speak after being informed of his rights is highly probative. *Oregon v. Elstad, supra; People v. Harris, supra.* Thus, the court was correct in admitting defendant's post-*Miranda* confession.

## II.

Defendant next contends that the court erred in excluding testimony proffered by defendant from two witnesses, Officer Turner and Gregory Vallejo. We disagree.

■ Officer Turner's testimony was hearsay in that it consisted entirely of Vallejo's statements to him; hence, it was properly excluded. CRE 802.

At an in-camera proceeding, Vallejo, an employee of Furr's, testified that 50 minutes before the robbery he saw two unidentified black men in the Furr's parking lot. Ten minutes later, when his work shift had ended, Vallejo did not see the men.

■ This testimony, which was offered to imply that persons other than defendant and his companion were the perpetrators of the crime, was properly excluded during trial. Evidence that another person had an opportunity to commit the crime for which defendant is being tried is not admissible without proof that such other person had some direct connection with the crime. *People v. Mulligan,* 193 Colo. 509, 568 P.2d 449 (1977); *People v. White,* 632 P.2d 609 (Colo.App.1981).

Here, not only was no direct connection established between the two people Vallejo saw in the parking lot and the crime, but Vallejo's own testimony indicated that these people were viewed 50 minutes before the robbery, that they were in a public area at a time when others were leaving work, and that they were not seen again 10 minutes later. Under these circumstances, the trial court did not abuse its discretion in excluding this testimony. *People v.*

*White, supra; see also State v. Kelly,* 539 S.W.2d 106 (Mo.1976).

## III.

■ Defendant next contends that the court erred when it allowed the detective to testify that Thurman had told him that he, Thurman, had robbed Furr's. The court held that under the co-conspirator exception to the hearsay rule this was admissible testimony. We agree with defendant that the statement was inadmissible hearsay, but find that its admission was harmless.

To be admissible under the co-conspirator exception to the hearsay rule, Thurman's statement to the detective must have been made "during the course and in furtherance of the conspiracy." CRE 801(d)(2)(E). *People v. Peltz,* 701 P.2d 98 (Colo.App. 1984). Although a conspiracy may continue beyond the execution of the substantive crime, in this case it is clear that the conspiracy had ended before the conversation in question took place. *See People v. Burke,* 37 Colo.App. 289. 549 P.2d 419 (1976). Thus, Thurman's hearsay statement should not have been admitted under CRE 801(d)(2)(E).

The admission of the statement, however, was harmless error. Crim.P. 52(a) provides that any error "which does not affect substantial rights" of the defendant shall be considered harmless and disregarded. Here, Thurman's statement implicated only himself in the Furr's robbery and did not mention or specifically implicate defendant. *See Cruz v. People,* 166 Colo. 168, 442 P.2d 416 (1968). Thus, defendant's substantial rights were not affected by the admission of this statement into evidence, and no reversible error occurred. Crim.P. 52(a).

## IV.

Defendant further contends that the court erred in holding, after an in camera hearing, that a potential defense witness could be cross-examined concerning the circumstances surrounding her prior misdemeanor conviction for making a false police report.

While § 13–90–101, C.R.S., does not permit the use of a witness' prior misdemeanor conviction for impeachment purposes, CRE 608(b) provides that a court, in its discretion, may allow evidence of specific instances of conduct to be inquired into on cross-examination if probative of truthfulness or untruthfulness. *People v. Cole,* 654 P.2d 830 (Colo.1982).

Here, the court stated that although the prosecution would not be allowed to discuss the witness' criminal conviction, it would be allowed to question her about the circumstances surrounding this conviction because it concerned her "character for untruthfulness." Because the evidence concerned a prior instance when this witness had lied to protect defendant, the court was correct in this ruling. CRE 608(b).

Judgment affirmed.

KELLY and BABCOCK, JJ., concur.