STATE of Wisconsin, Plaintiff-Respondent,

v.

Anthony JACKSON, Defendant-Appellant.†

Court of Appeals

*No. 93–1941–CR. Submitted on briefs April 13, 1994.—Decided October 4, 1994.*

(Also reported in 525 N.W.2d 739.)

†Petition to review denied.

187

For the defendant-appellant the cause was submitted on the briefs of *R. Stan Nelson*, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Paul Lundsten*, assistant attorney general.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

SULLIVAN, J. Anthony T. Jackson appeals from a judgment of conviction for two counts of armed robbery, party to a crime, contrary to §§ 943.32(1)(b) & (2), and 939.05, STATS., and from an order denying his postconviction motion for a new trial. Jackson presents two issues for our review: (1) whether the trial court erroneously exercised its discretion when it denied his request to admit evidence that allegedly implicated a third person in the robbery; and (2) whether the trial court erred when it denied his motion for a new trial based on newly discovered evidence. We reject both arguments and affirm.

Jackson's convictions arose out of the April 21, 1992, armed robbery of a liquor store on Milwaukee's north side. There were two primary witnesses to the robbery. The owner was at the front counter of the store working the cash register, while a store employee was in the back of the store mopping the floor. The employee was about thirty feet from the cash register. The owner testified that at about 8:30 p.m., six or seven men "rushed" into the store, and one of the men pointed a gun at the owner's head and announced that it was a "holdup."

The owner also testified that the gunman then "rushed" to the back of the store where the employee was located, and that another man came around the front counter and pushed the owner away from the cash register. This man then frisked the owner and told

him to open the cash register. The owner testified that he complied and opened the cash register drawer. The man then took $834 from the drawer. The owner testified that he also saw some of the men take bottles of liquor and cigarettes. After about three or four minutes, all of the men left the store. The owner testified that the gunman was the only person he saw with a gun and that the gunman was black.

The store employee testified that as he was mopping in the back of the store, he heard a disturbance coming from the front of the store and began to walk towards the front counter. The employee testified that he saw a man with his arm pointed at the owner and that as he approached, this man saw the employee, pointed a gun at him, and moved towards him. The employee testified that he had a chance to look at the gunman's face, and that their eyes met. He also testified that the gunman was wearing a hood. The gunman made the employee turn around and kneel on the ground by holding the gun to the back of the employee's neck. He took the employee's wallet, ordered the employee not to turn around, and then left. The employee testified that he could not see what was occurring at the cash register during this time.

The employee was later called to the police administration building to view a lineup. The employee identified Jackson as the gunman. At trial, however, the employee testified that he was not absolutely sure the person he identified during the identification lineup was the gunman. The employee stated he was "probably about 80 percent sure." He also testified that he was eighty percent sure that the defendant, seated in court, was the gunman. His uncertainty existed because the gunman was wearing a hood, whereas

Jackson was not wearing one either during the lineup, or while sitting in court.

At the conclusion of the employee's testimony and outside of the jury's presence, Jackson requested that because of the employee's uncertainty, the employee view a photo of another man that Jackson allegedly had learned was the gunman. Jackson maintained his innocence in the robbery, and stated that prior to trial he learned who the actual gunman was, but only knew him by his alias, "Rat." It was not until the first day of trial that Jackson's investigator learned that "Rat" was possibly in police custody on different charges.

The trial court determined that Jackson would first need to identify "Rat" from a photo array, to ensure that the person in custody, Johnny Webster Heard, was actually the person Jackson knew by the alias "Rat." From an array of eleven photos, Jackson positively identified the photo of Heard as the alleged gunman, "Rat."

Next, the trial court had the employee view a six-person photo array that included Heard's photograph, but not Jackson's. The trial court asked the employee to look at the photographs and state "whether . . . you recognize any of those individuals as having been involved in any way in the alleged armed robbery . . . ." The employee stated that "the only way [he] could be more sure [was] if [he] saw them with a hood." Nonetheless, the employee eliminated from possible involvement in the robbery all of the individuals in the photo array except Heard. The employee stated:

> [EMPLOYEE]: No. There's a possibility it could have been this one.
> THE COURT: The last one?
> [EMPLOYEE]: But you know that's—I'm only going by the shape of his head.

THE COURT: Okay.

[EMPLOYEE]: But I don't recognize his face.

THE COURT: You don't recognize the face at all?

[EMPLOYEE]: I'm just going by the shape of the head.

THE COURT: So if you were asked are you positive that's the person, what would your answer be?

[EMPLOYEE]: I would not be.

THE COURT: You would not be. Okay. All right.

After the presentation of several more witnesses, the State rested its case-in-chief. Jackson then requested that he be allowed to recall the employee to testify about this photo array identification procedure. The trial court denied Jackson's request based on our decision in *State v. Denny,* 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984), which set forth a standard for the admission of evidence involving third-party guilt. The trial court stated that the employee's testimony about the photo identification "provides nothing more than grounds for suspicion" and had no "legitimate tendency" to establish that Heard could be the gunman. The trial court, however, did allow Jackson to testify that Heard was the gunman, and also allowed Heard's photo to be published to the jury. Further, the court would have allowed another potential defense witness, Ricky Shea, to testify about Jackson's alleged innocence in the robbery. Shea was a co-defendant who had earlier pled guilty to the armed robbery and was awaiting sentencing. When Jackson called Shea as a witness, however, Shea invoked his Fifth Amendment right against self-incrimination. The trial court concluded that Shea had made a "good faith expression of

fear" of self-incrimination and, therefore, he could not be compelled to testify.

The jury convicted Jackson of the armed robbery and he filed a postconviction motion seeking a new trial on the basis of newly discovered evidence. Jackson stated that Shea had been sentenced for the armed robbery and now was willing to testify that Jackson was not in any way involved in the armed robbery. Jackson claimed that Shea's potential testimony was newly discovered evidence. The trial court never reached the merits of Jackson's claim because it failed to reach a decision within sixty days from the filing date of Jackson's motion for a new trial. Therefore, pursuant to § 809.30(2)(i), STATS., the clerk of court entered an order denying the motion. Jackson appeals both the judgment and the order.

Jackson contends that the trial court erroneously exercised its discretion when it denied his request to recall the liquor store employee to testify about the employee's failure to eliminate Heard, from the photo array, as a participant in the armed robbery. Jackson also contends that the trial court's denial violated his constitutional right to present a defense. We disagree.

Whether to exclude evidence lies within the sound discretion of the trial court. *State v. Lindh,* 161 Wis. 2d 324, 348-49, 468 N.W.2d 168, 176 (1991). A proper exercise of discretion consists of the court applying the relevant law to the applicable facts in order to reach a reasonable conclusion. *See State v. Robinson,* 146 Wis. 2d 315, 330, 431 N.W.2d 165, 170 (1988). We reverse such a determination only where the trial court erroneously exercises that discretion. *State v. Oberlander,* 149 Wis. 2d 132, 142, 438 N.W.2d 580, 583 (1989).

194

The trial court based its decision on *Denny*, which states that there must be a "legitimate tendency" that the third person could have committed the crime before any proffered evidence of the alleged third person's guilt is relevant. *Denny*, 120 Wis. 2d at 622-25, 357 N.W.2d at 16-17. Furthermore:

> [T]o show a "legitimate tendency," a defendant should not be required to establish the guilt of third persons with that degree of certainty requisite to sustain a conviction in order for this type of evidence to be admitted. On the other hand, evidence that simply affords a possible ground of suspicion against another person should not be admissible. ... The "legitimate tendency" test asks whether the proffered evidence is so remote in time, place or circumstances that a direct connection cannot be made between the third person and the crime.

*Id.* at 623-24, 357 N.W.2d at 17.

The trial court concluded that the employee's potential testimony on the identification procedure was irrelevant to an assertion of third-party guilt for the robbery. The trial court stated that, at best, the employee's testimony would provide nothing more than grounds for suspicion. After reviewing the record, we conclude that the trial court lawfully exercised its discretion in excluding the evidence.

Jackson is correct that the employee did not eliminate Heard's photo from possible involvement in the robbery, stating: "There's a possibility it could have been this one [meaning Heard's photograph]." The employee, however, further stated that he was "going by the shape of his head" and that he did not "recognize his face." Finally, the court asked the employee: "[I]f you were asked are you positive [the person in the photo is] the person, what would your answer be?" The

employee stated he was not positive that the person in the photo was involved in the crime.

We conclude that the trial court was within its discretion to determine that this evidence provided nothing more than grounds for suspicion, and therefore it did not rise to the level necessary under *Denny*'s "legitimate tendency" standard. We further note that the trial court did not prevent Jackson from introducing all evidence of Heard's possible guilt in the armed robbery. The court allowed Jackson to identify Heard as the gunman, and it also allowed Heard's photo to be published to the jury. Thus, the trial court did not impermissibly interfere with Jackson's constitutional right to present a defense. While *Milenkovic v. State,* 86 Wis. 2d 272, 272 N.W.2d 320 (Ct. App. 1978), states that a criminal defendant has the constitutional right to present a defense, *Milenkovic* also states that this "fundamental right[ ] [is] not violated when the state precludes a defendant from presenting evidence which is irrelevant." *Id.* at 286, 272 N.W.2d at 327. Because we determine that the trial court did not erroneously exercise its discretion in determining that the employee's testimony failed to meet the *Denny* standard, Jackson had no constitutional right to present it to the jury.

Jackson also contends the trial court erred when it denied[1] his postconviction motion for a new trial based

---

[1] We note that the trial court's denial of the motion was properly based on § 809.30(2)(i), STATS., which requires the clerk of courts to immediately enter an order denying a motion for postconviction relief if the trial court has not made a determination on the motion within sixty days of its filing. Jackson filed the motion on January 28, 1993, but due to various delays, a motion on the hearing could not be held until April 27, 1993. At

on newly discovered evidence.[2] Jackson asserts the newly discovered evidence was Shea's now-available testimony that would allegedly establish Jackson's innocence in the armed robbery. Shea pled guilty in the armed robbery and was awaiting sentencing when Jackson called him as a witness. Once on the stand, Shea declined to testify, citing his Fifth Amendment guarantee against self-incrimination. After his sentencing, and after the conclusion of Jackson's trial, Shea allegedly would have testified that Jackson was innocent of the crime.

Jackson presents a unique issue: Is a co-defendant's testimony *newly discovered* evidence for new trial purposes when the defendant: (1) was aware of the evidence at the time of trial, but, (2) was unable to present it because the co-defendant who pled guilty and was awaiting sentencing refused to testify on Fifth Amendment grounds? This is a question of law that we review *de novo. See State v. Michels,* 150 Wis. 2d 94, 97, 441 N.W.2d 278, 279 (Ct. App. 1989). Wisconsin courts have never addressed this specific issue before, and therefore we look not only to Wisconsin's settled

that time the court declared that it was without competency to act upon the motion and the clerk of courts entered an order denying the motion pursuant to § 809.30(2)(i).

[2] Jackson also argues that he is entitled to a new trial in the interests of justice. In support of this argument, Jackson provides nothing more than a rehash of the issues discussed above. We are not convinced that there was probable miscarriage of justice, that Jackson should not have been found not guilty, or that a new trial would lead to different result. Therefore, we conclude that Jackson is not entitled to a new trial in the interests of justice. *See State v. Johnson,* 135 Wis. 2d 453, 467, 400 N.W.2d 502, 508 (Ct. App. 1986).

criteria defining newly discovered evidence, but also to other jurisdictions for guidance.

██

We have previously stated that to constitute newly discovered evidence supportive of an order for a new trial, the evidence must meet each of the following five criteria:

> (1) the evidence must have come to the moving party's knowledge after the trial; (2) the moving party must not have been negligent in seeking to discover it; (3) the evidence must be material to the issue; (4) the testimony must not be merely cumulative to the testimony that was introduced at trial; and (5) it must be reasonably probable that a different result would be reached on a new trial.

*State v. Kimpel,* 153 Wis. 2d 697, 701-02, 451 N.W.2d 790, 792 (Ct. App. 1989) (citations omitted). Jackson asserts that Shea's proffered testimony meets all five criteria. In doing so, he acknowledges that he was aware of Shea's testimony, but he claims that "[i]n order for a party to have knowledge of evidence, [it] must not only be aware of it, but also be able to use it." We fundamentally disagree with this claim and note that federal case law has succinctly and persuasively rebuked claims similar to Jackson's.

The federal courts[3] have consistently held that evidence such as Shea's proffered testimony is not

---

[3] The federal courts were construing motions for new trials under Rule 33 of the Federal Rules of Criminal Procedure which requires proof of criteria nearly identical to that provided by Wisconsin law:

> (1) the evidence is, in fact, newly discovered since trial; (2) the facts must show diligence by the defendant; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be

newly discovered evidence for purposes of postconviction motions for new trials.[4] The federal courts reached this conclusion because they determined that there is a distinction between newly *discovered* evidence that was unknown at the time of trial and newly *available* evidence that was known to the defense, but unavailable because of the co-defendant's refusal to testify. *See U.S. v. Metz,* 652 F.2d 478, 480 (5th Cir. 1981). Newly available evidence is not analogous to newly discovered evidence. *Id.* When facing such evidence, "[A] court

material; and (5) it must be of a nature that at a new trial it would probably produce an acquittal.

*U.S. v. Flynn,* 791 F. Supp. 133, 136 (M.D.N.C. 1992).

[4] *U.S. v. Dale,* 991 F.2d 819, 838-39 (D.C. Cir.), *cert. denied,* 114 S. Ct. 650, *and cert. denied sub nom., Ashton v. U.S.,* 114 S. Ct. 286 (1993); *see also U.S. v. Lockett,* 919 F.2d 585, 591-92 (9th Cir. 1990) (holding district court did not abuse discretion in denying defendant's motion for new trial based on new availability of co-defendant's testimony exculpating defendant, where co-defendant had chosen earlier not to testify); *U.S. v. Diggs,* 649 F.2d 731, 740 (9th Cir.) (holding "[w]hen a defendant who has chosen not to testify comes forward to offer testimony exculpating a co-defendant, the evidence is not 'newly discovered.' "), *cert. denied,* 454 U.S. 970 (1981); *U.S. v. Metz,* 652 F.2d 478, 479-80 (5th Cir. 1981) (holding newly available evidence not synonymous with newly discovered evidence); *U.S. v. Jacobs,* 475 F.2d 270, 286 n.33 (2d Cir.) (stating trial court "must exercise great caution" in considering such evidence newly discovered), *cert. denied sub nom., Lavelle v. U.S.,* 414 U.S. 821, *and cert. denied sub nom., Thaler v. U.S.,* 414 U.S. 821 (1973); *see, e.g., Flynn,* 791 F. Supp. at 136; *U.S. v. Carlin,* 573 F. Supp. 44, 46-48 (N.D. Ga. 1983), *aff'd,* 734 F.2d 1480 (11th Cir. 1984); *U.S. v. La Duca,* 447 F. Supp. 779, 782-83 (D. N.J.), *aff'd sub nom., U.S. v. Rocco,* 587 F.2d 144 (3d Cir. 1978), *cert. denied, La Duca v. U.S.,* 440 U.S. 972 (1979); *U.S. v. Matthews,* 424 F. Supp. 339, 340-42 (E.D. Pa. 1976).

must exercise great caution in considering evidence to be 'newly discovered' when it existed all along and was unavailable only because a co-defendant, since convicted, had availed himself of his privilege not to testify." *U.S. v. Jacobs,* 475 F.2d 270, 286 n.33 (2d Cir.), *cert. denied sub nom., Lavelle v. U.S.,* 414 U.S. 821, *and cert. denied sub nom., Thaler v. U.S.,* 414 U.S. 821 (1973).

The reason for this caution is two-fold:

> First, the substance of the testimony is not in fact new evidence, since it was always known by the defendant seeking a retrial. Second, and equally important, the once-unavailable defendant who now seeks to exculpate his co-defendant lacks credibility, since he has nothing to lose by testifying untruthfully regarding the alleged innocence of the defendant seeking a retrial.[5]

*U.S. v. Carlin,* 573 F. Supp. 44, 47 (N.D. Ga. 1983), *aff'd,* 734 F.2d 1480 (11th Cir. 1984).

---

[5] Another court has further discussed the untrustworthiness of such "newly available" evidence:

> The co-defendant who has admitted his guilt and who is awaiting sentencing is concerned with what the sentencing court will do. That very concern is a potent guarantee of trustworthiness. Once sentence is imposed, however, there is very little to deter the pleading co-defendant from untruthfully swearing out an affidavit in which he purports to shoulder the entire blame. In these circumstances, the possibility of a successful prosecution for perjury is not a sufficient guarantee of trustworthiness. If the new trial motion is granted, two new trials would be required. If the motion for a new trial is denied, a perjury prosecution would probably require a replay of the original trial to establish the untruthfulness of the affiant's statements. Most prosecutors do not have the resources to constantly retry the same issues against the identical defendants.

*La Duca,* 447 F. Supp. at 783.

We are persuaded by the rationale of the federal courts and, therefore, conclude as a matter of law that newly available testimony from a co-defendant is not newly discovered evidence necessitating a new trial for the defendant where, (1) the defendant was aware of that possible testimony before or at trial, and (2) the co-defendant previously declined to testify for fear of self-incrimination.

In the present case, Jackson concedes in his appellate brief that he was aware of Shea's potential testimony at trial, but that it was unavailable for his use because Shea declined to testify. Accordingly, because Jackson was aware of the testimony, we conclude that the evidence was not newly discovered, and therefore, his motion for a new trial on the basis of this testimony was properly denied by the trial court.

*By the Court.*—Judgment and order affirmed.