ANNETTE KINGSLAND ZIEGLER, J.
f 91.

{con-

curring). I join the majority opinion because it "reaffirm [s] the Denny test as the appropriate test for circuit courts to use to determine the admissibility of third-party perpetrator evidence." Majority op., ¶ 10. The majority opinion reaffirms that "the Denny test is a three-prong test; it never becomes a one- or two-prong test." Majority op., ¶ 64. I would not join the majority opinion if it were interpreted as doing anything other than reaffirming the longstanding application of the test from State v. Denny, 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984).
¶ 92. I write separately to clarify that the majority opinion is intended to reaffirm the Denny test and that certain passages in the majority opinion should *233 not be misconstrued. In particular, the majority opinion should not be read as suggesting that a defendant may sometimes introduce Denny evidence without satisfying all three prongs of the Denny test. Further, it should not be read as suggesting that a third party's presence at a crime scene can alone satisfy multiple prongs of this test, or that a third party's unknown whereabouts during a crime can alone establish that the third party had an opportunity to commit the crime.
¶ 93. I also write separately to explain the Denny test's requirements, purposes, and constitutional basis. A criminal defendant is constitutionally endowed with the right to present a defense. The Denny test attempts to balance a meaningful opportunity to present a complete defense, namely that a third party perpetrated the crime, with the requirement that such evidence meet established standards for admissibility. Simply stated, the Denny test requires that proffered evidence create a legitimate tendency that someone other than the defendant committed the crime charged. Evidence is deemed inadmissible under Denny if it merely raises possible grounds for suspicion. The Denny test, like the test for all admissible evidence, requires that in order for third-party perpetrator evidence to be admitted, it must have the requisite indicia of reliability, be relevant, and not be unfairly prejudicial. The Denny test requires a defendant to demonstrate that the third-party perpetrator had: (1) the motive to commit the crime; (2) the opportunity to commit the crime; and (3) a direct connection to the crime.
¶ 94. Finally, I write separately to explain that evidence of an unknown third-party perpetrator is generally deemed inadmissible when the defendant *234 cannot meet the Denny test. Most typically, if such evidence is admissible, it is because the evidence is deemed admissible as other acts evidence. In the present case, General Grant Wilson did not proceed under the theory that his proffered evidence was other acts evidence. Instead, Wilson sought to introduce evidence that Willie Friend hired someone to shoot Evania Marie. Wilson's defense was that, although it was not Friend who shot Marie, Friend hired someone unknown to Wilson to shoot Marie. Wilson's proffer was that, in the past, Friend, who was romantically involved with Marie, had exhibited violent behavior toward her and that she was pregnant. The defense theory was that Friend wanted Marie dead because he did not want to be responsible for the baby. Wilson sought to introduce witnesses who would testify that Friend slapped Marie at least once and threatened to kill her. Wilson wished to argue, based on this proffered evidence, that Friend hired someone to murder Marie. However, Wilson's proffer failed to demonstrate that these alleged assassins were anything but purely hypothetical people. While Friend's motive possibly could have been demonstrated, opportunity and direct connection were missing. Wilson's proffered evidence was speculative, at best, and the circuit court did not err in excluding it. Simply stated, the proffered third-party perpetrator evidence was not admissible because it did not meet the long-standing Denny test.
I. THE MAJORITY OPINION REAFFIRMS THE DENNY TEST
¶ 95. While a majority of the court intends that this case reiterate the Denny test, I write separately because the majority opinion may need some clarification. For example, it states that "[o]nly in rare cases *235 will the context dictate that a showing on one or two prongs is strong enough to lower the threshold for the showing on the third prong." Majority op., ¶ 89. That statement should not be read as eliminating a defendant's need to prevail on all three prongs of the Denny test under any circumstances. To introduce evidence that a third party may have committed the crime charged, a defendant always must satisfy all three prongs of the Denny test: motive, opportunity, and direct connection to the commission of the crime. Denny, 120 Wis. 2d at 625; see also State v. Avery, 2011 WI App 124, ¶ 43, 337 Wis. 2d 351, 804 N.W.2d 216. The majority opinion correctly recognizes that "the Denny test is a three-prong test; it never becomes a one- or two-prong test." Majority op., ¶ 64. To be admissible, a defendant's evidence of a third-party perpetrator must establish a "legitimate tendency" that the third party committed the crime charged. Denny, 120 Wis. 2d at 623-24. A "mere possibility" that a third party committed the crime charged is insufficient. See id. at 623 (holding that "evidence that simply affords a possible ground of suspicion against another person should not be admissible"). Evidence of a mere possibility that a third party may have committed the crime charged is deemed inadmissible because it calls for speculation, creates a trial within a trial, and lacks the sufficient indicia of reliability or probative value so to qualify as admissible evidence.
¶ 96. The majority opinion also states: "What must be stressed is that 'presence' alone will normally not satisfy both of these distinct prongs [opportunity and direct connection]." Majority op., ¶ 60. That sentence should not be read as suggesting that a third party's presence at a crime scene will automatically satisfy any one prong of the Denny test, let alone more *236 than one prong. The majority opinion correctly recognizes that "the fact that a person with a motive to commit the crime is present at the crime scene is not enough to satisfy both 'opportunity' and 'direct connection.' " Majority op., ¶ 54. The majority opinion also correctly notes that presence at a crime scene does "not normally. . . establish" a third party's direct connection to the commission of the crime. Majority op., ¶ 72 (citing State v. Eagles, 812 A.2d 124 (Conn. App. Ct. 2002)). Similarly, a third party's presence at a crime scene does not necessarily establish that he or she had an opportunity or a motive to commit the crime. See Wiley v. State, 74 S.W.3d 399, 406 (Tex. Crim. App. 2002) (holding that an alleged third-party perpetrator had no opportunity to commit an arson because, although present at the crime scene, he lacked the mental competence to commit the crime). Accordingly, a third party's presence at a crime scene, by itself, will not automatically satisfy any one of the three prongs of the Denny test, and it will not satisfy all three prongs.
¶ 97. I also wish to clarify the majority opinion's statement that "[i]n all but the rarest of cases, ... a defendant will need to show more than an unaccounted-for period of time to implicate a third party." Majority op., ¶ 68 (citing State v. Vollbrecht, 2012 WI App 90, 344 Wis. 2d 69, 820 N.W.2d 443). A third party's unaccounted-for period of time will never, in and of itself, satisfy the Denny test or even a single prong of this test. The majority opinion was interpreting Vollbrecht as holding that the defendant in that case satisfied the opportunity prong of the Denny test by showing that (1) a third party's whereabouts during a murder was unaccounted for; and (2) the third party was convicted of committing a very similar murder in the same area around the same time. See majority op., *237 ¶¶ 68, 86. The majority opinion should have clarified its discussion of Vollbrecht and how opportunity fit within the legal theories forwarded in that case. As explained earlier, the majority opinion correctly recognizes that the Denny test is always a three-prong test and that a third party's whereabouts will not satisfy multiple prongs of this test.
¶ 98. In sum, the majority opinion should not be read as changing the Denny test. A defendant always is required to prevail on all three prongs of the Denny test in order to introduce evidence of an alleged third-party perpetrator. The defendant's proffer must demonstrate a legitimate tendency that the third party committed the crime charged, not merely a speculative ground of suspicion in that regard. A third party's presence at a crime scene, by itself, will not necessarily satisfy any prong of the Denny test and will not satisfy multiple prongs. Similarly, a third party's unaccounted-for whereabouts during the commission of a crime will not alone satisfy any prong of the Denny test.
II. THE DENNY TEST
¶ 99. I turn now to the Denny test requirements, purposes, and constitutional basis. The court of appeals in Denny created "a bright line standard requiring that three factors be present, i.e., motive, opportunity and direct connection," before a defendant may introduce evidence that a third party committed the crime charged. Denny, 120 Wis. 2d at 625. Specifically,
[t]hird-party defense evidence may be admissible under the legitimate tendency [e.g., Denny] test if the defendant can show that the third party had (1) the motive and (2) the opportunity to commit the charged *238 crime, and (3) can provide some evidence to directly connect the third person to the crime charged which is not remote in time, place or circumstance.
State v. Scheidell, 227 Wis. 2d 285, 296, 595 N.W.2d 661 (1999) (citing Denny, 120 Wis. 2d at 623-24). The trial court remains the gatekeeper in determining what evidence is admissible and why.
¶ 100. Under the Denny test, "there must be a 'legitimate tendency' that the third person could have committed the crime." Denny, 120 Wis. 2d at 623 (quoting Alexander v. United States, 138 U.S. 353, 356-57 (1891)). Thus, "evidence that simply affords a possible ground of suspicion against another person should not be admissible. Otherwise, a defendant could conceivably produce evidence tending to show that hundreds of other persons had some motive or animus against the deceased — degenerating the proceedings into a trial of collateral issues." Denny, 120 Wis. 2d at 623-24.
¶ 101. States use a wide variety of terminology for their Denny-type tests, such as "directly links," "substantially connects," or "points directly." See 22 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5180.2 (2d ed. 2012). However, despite that variation in language, many states ultimately require a defendant to establish motive, opportunity, and direct connection. See 41 C.J.S. Homicide § 328. A few jurisdictions eschew the language of a Denny-type test in favor of conventional evidentiary principles, such as relevancy and balancing probative value against prejudice. See David McCord, "But Perry Mason Made It Look So Easy!": The Admissibility of Evidence Offered by a Criminal Defen *239 dant to Suggest That Someone Else Is Guilty, 63 Tenn. L. Rev. 917, 937-38 (1996); People v. Primo, 753 N.E.2d 164, 167-69 (N.Y. 2001).
¶ 102. The purpose of the Denny test is to allow a defendant to exercise his or her constitutional right to present a defense but also to ensure that third-party perpetrator evidence meets certain criteria for admissibility.[1] See Denny, 120 Wis. 2d at 622-23; Avery, 337 Wis. 2d 351, ¶ 50 (The Denny test is "a mechanism of balancing the accused's right to present a defense against the State's interest in excluding evidence that... is no more than marginally relevant, of extremely limited probative value, and likely to confuse the jury and waste the jury's time.") (internal quotation marks omitted); Primo, 753 N.E.2d at 168 (noting that a Denny-type test is "shorthand for weighing probative value against prejudice in the context of third-party culpability evidence"); John H. Blume et al., Every Juror Wants A Story: Narrative Relevance, Third Party Guilt and the Right to Present A Defense, 44 Am. Crim. L. Rev. 1069, 1080-85 (2007) (same); see also Ellen Yankiver Suni, Who Stole the Cookie from the Cookie Jar?: The Law and Ethics of Shifting Blame in Criminal Cases, 68 Fordham L. Rev. 1643, 1680-81 (2000) (noting that, although some courts view a Denny-type test as a means of excluding irrelevant *240 evidence, most courts view it as a balancing of probative value against prejudicial effect).
¶ 103. The United States Supreme Court placed its imprimatur on what Wisconsin calls the Denny test. See Holmes v. S. Carolina, 547 U.S. 319, 327 & n.* (2006). The Supreme Court concluded that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." Id. at 326 (citations omitted). By excluding unfairly prejudicial evidence, the Denny test prevents "unsupported jury speculation as to the guilt of other suspects . . . ." Denny, 120 Wis. 2d at 622 (quoting People v. Green, 609 P.2d 468, 480 (Cal. 1980)). Hence, evidence that raises only a speculative doubt will fail the Denny test. See People v. Hall, 718 P.2d 99, 104 (Cal. 1986). A defendant has no constitutional right to present speculative, unreliable evidence in an effort to create doubt. See Scheidell, 227 Wis. 2d at 303-04; Denny, 120 Wis. 2d at 622.
¶ 104. In Denny the defendant appealed his judgment of conviction for murder, arguing that the circuit court erred by excluding evidence that a third party committed the murder. Denny, 120 Wis. 2d at 617. The court of appeals held that the circuit court did not err in excluding that evidence. Id. at 625. Denny sought to introduce testimony that the victim " 'may have gotten into trouble with... a big drug dealer.'" Id. That testimony failed to show that the drug dealer had a motive or an opportunity to commit the crime or a direct connection to the crime. Id. Denny also sought to introduce testimony that the victim owed money to another man. Id. Assuming that the man had a motive to commit the murder, the court of appeals held that *241 Denny failed to show the man's opportunity or direct connection. Id. Finally, Denny sought to introduce testimony that the victim angered another man by purchasing a shotgun from him and later selling it. Id. The court of appeals held that this testimony established motive but failed to establish opportunity or direct connection. Id.
¶ 105. Courts have subsequently upheld the exclusion of third-party perpetrator evidence under Denny. For example, in State v. Jackson, the defendant was convicted of robbing a liquor store at gunpoint. State v. Jackson, 188 Wis. 2d 187, 194, 525 N.W.2d 739 (Ct. App. 1994). At trial, a liquor store employee testified that "he was 'probably about 80 percent sure'" that Jackson was the perpetrator. Id. at 191. "At the conclusion of the employee's testimony and outside of the jury's presence, Jackson requested that because of the employee's uncertainty, the employee view a photo of another man that Jackson allegedly had learned was the gunman." Id. at 192. The employee viewed photographs of six people, one of whom was the alleged third-party perpetrator, who went by the alias "Rat." Id. The employee was certain that five of the people were not the perpetrator, but he said that "Rat" could have been the perpetrator. Id. at 192-93. Based on Denny, the circuit court denied Jackson's request to recall the employee to testify that "Rat" could have been the perpetrator. Id. at 193. The court of appeals held that the circuit court did not err in excluding that evidence because it "provided nothing more than grounds for suspicion. . . ." Id. at 196. The court of appeals noted that the circuit court allowed Jackson to identify "Rat" as the perpetrator and to publish the photograph of "Rat" to the jury. Id. "Thus, the trial *242 court did not impermissibly interfere with Jackson's constitutional right to present a defense." Id.
III. EVIDENCE OF AN UNKNOWN THIRD-PARTY PERPETRATOR IS GENERALLY DEEMED INADMISSIBLE
¶ 106. Evidence of an unknown third party, who is alleged to have committed the crime charged, is most often deemed too speculative to be admissible. In the present case, the proffered evidence, as it relates to unknown, alleged hit men, is inadmissible under Denny.[2] General Grant Wilson's defense theory may be viewed in one of two ways. It may be viewed as an unknown third-party perpetrator theory because the alleged actual shooter is unknown. On the other hand, the defense theory could be viewed as a known third-party perpetrator theory because Willie Friend allegedly hired the shooter. Either way, the circuit court was correct to exclude the evidence because it was speculative at best and did not meet the Denny criteria.
A. Unknown Third-Party Perpetrators
¶ 107. In some, but not all, cases in which a defendant seeks to introduce evidence of an unknown third-party perpetrator, the defendant relies on other acts evidence. The present case does not involve any other acts evidence. "[0]ften times the defense must rely on other act evidence to raise a circumstantial inference that the third party carried out the crime." *243 7 Daniel D. Blinka, Wisconsin Practice Series: Wisconsin Evidence § 404.7, at 215 (3d ed. 2008). However, evidence of an unknown third-party perpetrator is often inadmissible even when it relies on other acts evidence.
¶ 108. In Scheidell we held that the Denny test does not apply to other acts evidence of a similar crime committed by an unknown third party who, according to the defendant, committed the crime charged. Scheidell, 227 Wis. 2d at 297. We reasoned that, "[i]n a situation where the perpetrator of the allegedly similar crime is unknown, it would be virtually impossible for the defendant to satisfy the motive or the opportunity prongs of the legitimate tendency test of Denny." Scheidell, 227 Wis. 2d at 296. Instead, evidence of a similar crime committed by an unknown third party is governed by the test for determining the admissibility of other acts evidence.[3] Id. at 287-88.
¶ 109. The defendant in Scheidell appealed his judgment of conviction for armed burglary and attempted first-degree sexual assault. Id. at 287. He *244 entered a woman's apartment during the night, while armed with a knife and wearing a mask, and attempted to sexually assault her. Id. at 288-90. At trial, he sought to introduce evidence that, five weeks after that burglary, an unknown assailant burglarized a woman's home at night and sexually assaulted her. Id. at 290-91. Scheidell was in jail during the second burglary, which occurred four blocks away from the previous burglary. Id. Scheidell wanted to argue that this unknown assailant committed the burglary for which he was charged. Id. We held that the circuit court "properly excluded" this other acts evidence because it was not relevant. Id. at 310. Specifically, due to several factual distinctions between the two burglaries, this other acts evidence was not probative of Scheidell's identity as the assailant in the first burglary. Id. at 309-10. In subsequent cases, Wisconsin courts have rarely held that other acts evidence of an unknown third-party perpetrator is admissible.[4]
*245 ¶ 110. In other jurisdictions, evidence of an unknown third-party perpetrator is most often deemed too speculative to be admissible. See, e.g., Wheeler v. United States, 977 A.2d 973 (D.C. 2009); Gethers v. United States, 684 A.2d 1266 (D.C. 1996); Neal v. State, *246 436 S.E.2d 574 (Ga. Ct. App. 1993); People v. Armstrong, 704 P.2d 877 (Colo. App. 1985); State v. Eagles, 812 A.2d 124 (Conn. App. Ct. 2002). These cases involved traditional Denny evidence, not other acts evidence of a third-party perpetrator.
¶ 111. In Wheeler the defendant appealed his judgment of conviction for murder, arguing that the trial court erred by excluding his evidence that someone else committed the crime. Wheeler, 977 A.2d at 976-77. The defendant sought to introduce evidence that the murder victim had cocaine in his system at the time of death and, therefore, "had a 'dangerous lifestyle' and was at a 'high risk of violent death' from '[r]ival drug dealers, dissatisfied customers, or frustrated robbers.' " Id. at 990. The District of Columbia Court of Appeals held that the trial court properly excluded that evidence because it "fail[ed] to provide anything more than 'a hypothetical, unidentified person who may have had a motive' to commit the murder." Id. (quoting Gethers, 684 A.2d at 1271).
f 112. In Gethers two defendants appealed from their convictions for burglarizing an apartment together and shooting a man who lived in the apartment. Gethers, 684 A.2d at 1268. On appeal, they argued that the trial court erred by excluding evidence that someone besides them committed the burglary and shooting. Id. The proffered evidence was that the victim was a drug dealer and thus might have been shot by a disgruntled customer. Id. at 1270,1272. The District of Columbia Court of Appeals held that the trial court did not err in excluding that evidence. Id. at 1272. The proffer of that evidence "made no showing" that a disgruntled customer, "if he or she actually existed, was connected in any way to the shooting." Id. Defense *247 "counsel was merely trying to 'throw something out there for the jury to speculate about.'" Id.
¶ 113. In Neal the defendant appealed his judgment of conviction for aggravated child molestation, arguing that the trial court erred by excluding evidence that someone else committed the crime. Neal, 436 S.E.2d at 575. The evidence in question was that "the mother of the victim was a cocaine addict and had casual relationships with numerous men in the family home. This testimony was offered in support of Neal's contention that one of these unidentified men . . . may have molested the victim." Id. The Georgia Court of Appeals held that the trial court did not err by excluding that evidence. Id. Evidence of a third-party perpetrator is inadmissible "where no specific individual is accused and the defendant merely speculates that a person or persons unknown may have had the opportunity to commit the crime." Id. at 576 (citation omitted). The defendant "has not presented anything other than his own speculation that unknown alleged drug users frequenting [the victim's] residence may have had the opportunity to molest the victim." Id. Because the defendant failed to show a direct connection between one of those unknown men and the crime, his proffered evidence was inadmissible. Id.
¶ 114. In Armstrong the defendant appealed his judgment of conviction for robbing a cafeteria with another African-American male. Armstrong, 704 P.2d at 878. The defendant argued that the trial court erred by excluding evidence that, 50 minutes prior to the robbery, a cafeteria employee saw "two unidentified black men" in the cafeteria parking lot. Id. at 879. The defendant wanted to argue during trial that those unidentified men committed the robbery. Id. The Colorado Court of Appeals held that the trial court did not *248 err by excluding that evidence, because that evidence failed to establish a "direct connection" between the unidentified men and the robbery. Id.
¶ 115. In Eagles the defendant appealed a judgment of conviction for robbing and shooting a man. Eagles, 812 A.2d at 125-26. On appeal the defendant argued that the trial court erred in excluding his proffered evidence that someone else committed the robbery and shooting. Id. at 126. The proffered evidence was testimony from two witnesses who saw three unidentified men, none of whom was the defendant, running from the vicinity of the crime shortly after the gunshots. Id. at 127. The Connecticut Appellate Court held that the trial court did not err in excluding the evidence. Id. at 128. The appellate court reasoned that the defendant failed to present a "direct connection" between any of the three men and the crime. Id. Further, the defendant offered "no evidence of motive on the part of any of the three men to commit the crime." Id.
¶ 116. Consistent with the foregoing cases, General Grant Wilson's proffered evidence was inadmissible under Denny. See Scheidell, 227 Wis. 2d at 296. Further, Wilson did not attempt to introduce any other acts evidence, so his proffered evidence was inadmissible under Scheidell. Wilson attempted to introduce testimony that Willie Friend had slapped and threatened an allegedly pregnant Evania Marie, in order to argue that Friend hired assassins to kill Marie. This evidence was not other acts evidence and it fell far short of satisfying the Denny three-prong test. Wilson did not identify any possible assassins or introduce any evidence indicating that Friend arranged for Marie to be killed. In fact, Wilson "has not presented anything other than his own speculation that unknown alleged" *249 hit men murdered Marie. See Neal, 436 S.E.2d at 576. He "fail[ed] to provide anything more than 'a hypothetical, unidentified'" hit man or hit men. See Wheeler, 977 A.2d at 990 (quoting Gethers, 684 A.2d at 1271). Moreover, Wilson "made no showing" that the alleged hit men, if they "actually existed, [were] connected in any way to the shooting." See Gethers, 684 A.2d at 1272. It would require a great deal of speculation to conclude that Friend hired assassins to kill the allegedly pregnant Marie based on testimony that he slapped and threatened her once or twice. Thus, Wilson "was merely trying to 'throw something out there for the jury to speculate about.'" See Gethers, 684 A.2d at 1272. This kind of speculative evidence about unknown, alleged perpetrators is not admissible.
¶ 117. In sum, if Wilson's defense theory is viewed as an unknown third-party perpetrator theory because the alleged shooters are unknown, his proffered evidence is inadmissible under Denny, Scheidell, and many non-Wisconsin cases.
B. Evidence that a Known Third Party Allegedly Hired Unknown Persons to Commit the Crime Charged
¶ 118. Few third-party perpetrator cases involve an allegation that a known third party arranged for unknown persons to commit the crime at issue. One such case is Freeland v. United States, 631 A.2d 1186 (D.C. 1993). In that case Larry Freeland was charged with the murder of his wife. Freeland, 631 A.2d at 1187. The trial court excluded his proffered evidence that a man named William Hawthorne hired people to commit the murder. Id. Prior to the murder of Freeland's wife, Freeland and Hawthorne were fellow prison inmates. Id. at 1188. Freeland witnessed Hawthorne stab an *250 other inmate to death. Id. Freeland testified against Hawthorne in his grand jury trial regarding the stabbing death. Id.
¶ 119. The District of Columbia Court of Appeals held that the proffered evidence should have been admitted as Denny-type evidence. Id. at 1190. Hawthorne had a motive to hire assassins to kill Freeland's wife in order to retaliate against Freeland for his grand jury testimony and to intimidate him into not testifying against Hawthorne at trial. See id. at 1189-90. Freeland's evidence demonstrated that Hawthorne had a "clear Q link" to the murder and a "present ability to carry out the threats through others." Id. at 1189 — 90. Specifically, Hawthorne's associates confronted Freeland on the street several times and "repeatedly made threats to [Freeland] and his family in order to intimidate [Freeland] and to retaliate for his grand jury testimony.. .." Id. In addition, Freeland introduced evidence showing that Hawthorne was being prosecuted for threatening other witnesses. Id.
¶ 120. Freeland stands in stark contrast to the present case. In Freeland the defendant introduced a substantial amount of other acts evidence showing that the alleged third-party perpetrator, William Hawthorne, was capable of having his associates carry out the murder with which the defendant was charged. Hawthorne's associates confronted Freeland in person several times and "repeatedly" intimidated and threatened Freeland and his family because Freeland was an eyewitness in Hawthorne's murder trial. By contrast, Wilson has not introduced any evidence indicating that Willie Friend or his associates had previously murdered anyone. In fact, Wilson introduced no evidence showing that Friend had ever used his associates to commit any crime on his behalf. In Freeland Hawthorne's associates *251 were real people whom Freeland saw and spoke to several times. By contrast, Wilson did not even introduce evidence indicating that Friend had associates who were willing and able to murder Marie. Wilson's proffered evidence is pure speculation about unidentified, hypothetical hit men. In Freeland the defendant also introduced evidence showing that Hawthorne was being prosecuted for threatening other witnesses. By contrast, Wilson proffered no other acts evidence at all. "[0]ften times the defense must rely on other act evidence to raise a circumstantial inference that the third party carried out the crime." Blinka, supra, at 215.
¶ 121. In Freeland the defendant's "hit man" theory of defense could be reasonably inferred from his proffered evidence. Simply stated, a jury need not speculate in order to conclude that, because Hawthorne's associates "repeatedly" threatened Freeland's family, those associates might have killed Freeland's wife. In the present case, Wilson's "hit man" theory of defense had no foundation in his proffered evidence. A jury would necessarily have to speculate in order to conclude that, because Friend slapped and threatened Marie once or twice, he hired assassins to kill her. Unlike Freeland's proffered evidence, Wilson's proffered evidence had nothing whatsoever to do with possible hit men. Falling far short of the proffer made in Freeland, Wilson's proffered evidence was pure speculation. This kind of evidence is inadmissible.
¶ 122. In sum, Wilson's proffer was entirely speculative and fell short of establishing a legitimate tendency that Friend arranged for hit men to kill Marie. The circuit court did not err in excluding that proffered evidence.
*252 ¶ 123. For the foregoing reasons, I respectfully concur.
1 124. I am authorized to state that Chief Justice PATIENCE DRAKE ROGGENSACK joins this concurrence.

 The court of appeals in Denny seemed to view this test as a means of excluding evidence that is either irrelevant or, if relevant, unfairly prejudicial. See State v. Denny, 120 Wis. 2d 614, 622, 623-24, 357 N.W.2d 12 (Ct. App. 1984). See also Wis. Stat. § 904.02 (rendering irrelevant evidence inadmissible); Wis. Stat. § 904.03 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

 Because this section discusses unknown third-party perpetrators, I do not discuss General Grant Wilson's proffered evidence as it relates to his theory that Willie Friend was the shooter.

 To determine whether other acts evidence is admissible, a court uses "a three-step analysis." State v. Jackson, 2014 WI 4, ¶ 55, 352 Wis. 2d 249, 841 N.W.2d 791. First, the evidence must be offered for an acceptable purpose under Wis. Stat. § 904.04(2), including " 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" Id. (quoting State v. Sullivan, 216 Wis. 2d 768, 772, 576 N.W.2d 30 (1998)). Second, the evidence must be relevant, which means that it must tend to make a fact of consequence more or less probable than it would be without the evidence. Id. (quoting Sullivan, 216 Wis. 2d at 772). Third and finally, the probative value of the evidence must not be " 'substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.'" Id. (quoting Sullivan, 216 Wis. 2d at 772-73).

 In State v. Wright the court of appeals upheld the exclusion of other acts evidence of an unknown third-party perpetrator under Scheidell. State v. Wright, 2003 WI App 252, ¶ 45, 268 Wis. 2d 694, 673 N.W.2d 386. Wright was convicted of eight counts of armed robbery and one count of attempted armed robbery. Id., ¶ 1. On appeal, he argued that the circuit court erred by excluding testimony of a man who identified Wright at a lineup as the perpetrator of a different robbery, but who was unable to identify Wright at a preliminary hearing. Id., ¶ 3. Wright argued that this proffered testimony was admissible other acts evidence because it suggested that whoever committed that other robbery could have committed all of the robberies for which Wright was tried and convicted. Id. The court of appeals held that, under Scheidell, the circuit court did not err in excluding that evidence. Id., ¶ 45. The court of appeals held "that the mere inability of a victim to identify the defendant as the perpetrator of a similar uncharged crime perforce takes the jury into the realm of conjecture or specu *245 lation." Id. The court of appeals noted that the proffered evidence was even more speculative than the inadmissible evidence proffered in Scheidell. See id. In Scheidell the defendant proffered evidence of a similar crime that he could not have committed because he was incarcerated at the time. Id. By contrast, Wright's "proffered testimony does not demonstrate that Wright was incapable of committing the similar crime." Id. "At the most, [the] proffered testimony merely shows that [the witness] could not identify Wright as the robber; it does not demonstrate that Wright could not have committed the offense." Id.
In contrast, other acts evidence of an unknown third-party perpetrator was erroneously excluded in State v. Davis. In that case, the defendant was charged with five counts of burglary and one count of armed robbery. State v. Davis, 2006 WI App 23, ¶[¶ 2-7, 289 Wis. 2d 398, 710 N.W.2d 514. One count of burglary was dismissed when the State discovered that Davis was incarcerated when that burglary occurred. Id., ¶ 8. The victim of that burglary had twice misidentified Davis as the burglar. Id., ¶¶ 3, 8-9. The circuit court denied Davis' motion to call that victim to testify that he had misidentified Davis as the burglar. Id., ¶ 9. Davis believed that this other acts evidence would establish that someone who looked like him committed that burglary and thus could have committed all of the burglaries for which he was on trial. Id., ¶ 10. The court of appeals held that this other acts evidence was erroneously excluded. Id., ¶ 30. The court of appeals reasoned that "[t]his is not a situation where someone accused of a crime makes a general claim that someone else must have done it." Id., ¶ 28. "Rather, here we have a burglary victim who twice misidentified Davis as the person he saw in his apartment." Id. "This fact provided Davis with the opportunity to attempt to prove that someone else, someone who looks a great deal like Davis, was burglarizing and robbing homes within the same general time frame." Id.