COURT OF APPEALS
DECISION
DATED AND FILED

April 21, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2079-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2014CF364

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

KANE MICHAEL ROBINSON,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and orders of the circuit court for Douglas County: GEORGE L. GLONEK, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Kane Robinson appeals from an amended judgment convicting him of felony murder, as a party to the crime, and from

orders denying two postconviction motions. He claims he is entitled to a new trial based upon the ineffective assistance of trial counsel, judicial bias, and in the interest of justice. We reject each of Robinson's claims and affirm.

## BACKGROUND

¶2     The predicate offense for the felony murder charge was attempted armed robbery. The State's theory was that Robinson, Robinson's brother Dallas Robinson, Chance Andrews, Andrews' girlfriend Teah Phillips, and Kyham Dunn drove together from Duluth, Minnesota, to Superior, Wisconsin, with information provided by Robinson for the purpose of stealing money and marijuana from Garth Velin. The group parked a few blocks away from Velin's house in an alley behind a Subway restaurant. Phillips knocked on Velin's door with a ruse of looking for a lost puppy. Once Phillips verified that Velin was home, Dallas Robinson, Dunn, and an armed Andrews approached Velin's house with their heads down and faces covered, while Robinson and Phillips waited in the car. During the robbery attempt, Andrews shot and killed Velin during a struggle for Andrews' gun.

¶3     After Robinson was convicted and sentenced, he filed a postconviction motion raising several issues. Relevant to this appeal, Robinson claimed his trial counsel provided ineffective assistance by failing to call three witnesses at trial to undermine the State's theory that Robinson went to Velin's house to steal marijuana and money. Robinson's grandfather, Robert Craven, Sr., purportedly would have testified that about fifteen to twenty minutes before the murder, Robinson had visited his house and asked to borrow money. Craven gave Robinson $15 to $20 and told him he could go to an ATM to get more. Robinson accepted the money and said it was enough. Two other people present in Craven's

house (collectively, the Craven witnesses) allegedly would have testified they had witnessed the exchange. In addition, Craven purportedly would have testified that both Robinson and his brother were aware that Craven kept marijuana in his refrigerator and that they were welcome to use it. Robinson argued the testimony of the Craven witnesses could have supported an inference Robinson had no need to rob Velin for money and marijuana. Robinson further claimed the lack of testimony from the Craven witnesses, in conjunction with other alleged errors not raised on this appeal, caused a miscarriage of justice warranting a new trial.

¶4      Robinson filed a supplement to his postconviction motion raising an additional claim based upon newly discovered evidence. Specifically, Robinson alleged he had learned Andrews, who had not testified at trial, would now testify that Robinson and the other co-defendants had thought Andrews was merely going to buy marijuana from Velin, and none of them were aware that Andrews had a gun or planned to rob Velin.

¶5      The circuit court held an evidentiary hearing at which Robinson's trial counsel and Craven testified but Andrews refused to testify. The testimony of Craven and an investigator who had interviewed Andrews was largely consistent with the allegations in the postconviction motion and supplement. However, Craven refused to answer whether he had ever provided marijuana to his grandsons in the past, on the grounds that it could incriminate him.

¶6      Robinson's trial counsel testified he had interviewed Craven and considered calling him as a witness, but he had decided against it for strategic reasons. In particular, trial counsel had concerns about Craven's credibility as a witness and believed it could be more harmful than helpful to let the jury know Robinson had been "out there looking for money" on the night of the murder.

3

Trial counsel also decided against attempting to call Andrews as a witness after speaking with Andrews' attorney, who warned him that it would not be wise to call Andrews. Based upon that warning and Andrews' lack of maturity as a teenager, trial counsel feared Andrews could say something that would implicate Robinson and damage the defense's theory of the case. Counsel also felt Andrews' testimony was not necessary to establish Robinson's defense in light of the absence of other direct evidence that Andrews had shown any of the co-defendants the gun or told anyone he intended to rob Velin.

¶7 The circuit court denied Robinson's claim that his trial counsel had provided ineffective assistance by failing to call the proposed witnesses, concluding that counsel had sound strategic reasons for his actions and that the proposed testimony would not have been likely to alter the outcome of the trial. The court also rejected Robinson's claim based on newly discovered evidence. The court emphasized that it had no reliable way to know what Andrews would say at a new trial, given his refusal to participate at the hearing. In the course of its discussion, the court also noted that even if Andrews had testified, he would lack credibility given his status as a co-defendant who had not made his statement to the investigator until after he had been sentenced.

¶8 Robinson subsequently filed a second postconviction motion, renewing his claim that Andrews' testimony constituted newly discovered evidence and raising an alternative claim that his counsel was ineffective for failing to interview Andrews. The second postconviction motion also advanced a claim for a new trial in the interest of justice based on the jury's failure to hear from Andrews. Additionally, Robinson asked the trial judge to recuse himself from hearing the second postconviction motion on the ground that the judge had demonstrated bias in determining Andrews' credibility without hearing his

testimony. The trial judge refused to recuse himself, and the circuit court denied the second postconviction motion following a hearing at which Andrews testified.

¶9 On appeal, Robinson renews his claims of ineffective assistance of counsel and manifest injustice related to counsel's failure to interview Andrews and to call the Craven witnesses and Andrews to testify, as well as his claim of judicial bias. He does not make any argument related to newly discovered evidence or other issues he raised below.

## DISCUSSION

### I. Ineffective assistance of counsel

¶10 A claim of ineffective assistance of counsel requires the defendant to show: (1) deficient performance by counsel; and (2) prejudice resulting from that deficient performance. *State v. Swinson*, 2003 WI App 45, ¶58, 261 Wis. 2d 633, 660 N.W.2d 12. We will not set aside the circuit court's factual findings about what actions counsel took or the reasons for them unless they are clearly erroneous. *State v. Pitsch*, 124 Wis. 2d 628, 634, 369 N.W.2d 711 (1985). However, whether counsel's conduct violated the constitutional standard for effective assistance of counsel is ultimately a legal determination that this court decides de novo. *Id.*

¶11 We need not address both components of the ineffective assistance test if the defendant fails to make a sufficient showing on one of them. *Swinson*, 261 Wis. 2d 633, ¶58. In this case, we conclude Robinson has failed to demonstrate deficient performance by counsel, and we therefore do not reach the question of prejudice.

¶12 In order to demonstrate deficient performance, a defendant must overcome a presumption that counsel's actions fell within a wide range of professional conduct. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Reasonable strategic choices informed by counsel's investigation of the law and facts are virtually unchallengeable on appeal. *Id.* at 690. We agree with the circuit court that trial counsel made reasonable strategic decisions within professional norms based on the information known to him.

¶13 First, counsel reasonably viewed the proffered testimony of Robinson asking Craven for money shortly before the murder as potentially bolstering the State's theory that Robinson had participated in the attempted robbery because he was looking for money. That inference was at least as strong as the inference Robinson advanced—namely that he had no need to engage in robbery after obtaining a mere $15 to $20 from Craven. In weighing the benefit of Craven's potential testimony, trial counsel also reasonably took into account that Craven's credibility could be questioned because of his familial relationship to Robinson and his illegal possession of marijuana.

¶14 Second, it was reasonable for trial counsel not to interview or call Andrews as a witness because Andrews' own attorney advised against doing so. Andrews' attorney was best positioned to know whether Andrews would be a credible witness and whether his testimony would likely help or harm Robinson's case. Andrews' attorney had no apparent reason to mislead trial counsel.

¶15 Third, after hearing the State's case, counsel knew that there was limited and conflicting evidence as to why Robinson had gone to Velin's house with the others, and that there was no direct testimony that Robinson knew in advance that Andrews was bringing a gun and planning to rob Velin. Therefore,

neither the Craven witnesses' nor Andrews' testimony was required for counsel to argue that Robinson had not gone to Velin's house with the intent to rob him.

## II.  Judicial bias

¶16  We review claims of judicial bias de novo.  *State v. Herrmann*, 2015 WI 84, ¶23, 364 Wis. 2d 336, 867 N.W.2d 772.  The party alleging bias bears the burden of overcoming a presumption that the judge acted "fairly, impartially, and without prejudice."  *Id.*, ¶24.  The presumption of impartiality may be overcome with an objective showing that an appearance of bias creates a great risk of actual bias.  *Id.*, ¶46.  Such an appearance of bias exists when a reasonable person could conclude the average judge with ordinary human tendencies and weaknesses could not be trusted to remain neutral under the circumstances.  *Id.*, ¶32.

¶17  Opinions formed by a judge based upon facts introduced or events occurring during the course of a current or prior proceeding involving a party do not constitute a valid basis for a partiality motion unless they display "a deep-seated favoritism or antagonism that would make fair judgment impossible." *State v. Rodriguez*, 2006 WI App 163, ¶36, 295 Wis. 2d 801, 722 N.W.2d 136. Judicial rulings alone "almost never" constitute a valid basis for a claim of judicial bias.  *See Liteky v. United States*, 510 U.S. 540, 555 (1994).

¶18  Here, Robinson has not alleged that the circuit court judge had any personal interest or stake in the outcome of his postconviction motion.  Nor has Robinson alleged that the judge made ad hominem attacks or derogatory comments about him in these or any prior proceedings that would indicate some deep-seated personal antagonism.   Rather, Robinson contends the judge demonstrated bias by "prejudging the credibility" of Andrews before he had

7

provided any testimony on Robinson's newly discovered evidence claim from his supplemented first postconviction motion.

¶19    The judge cited *State v. Jackson*, 188 Wis. 2d 187, 525 N.W.2d 739 (Ct. App. 1994), in making his credibility determination.  In that case, this court broadly stated that "the once-unavailable defendant who now seeks to exculpate his co-defendant lacks credibility, since he has nothing to lose by testifying untruthfully regarding the alleged innocence of the defendant seeking a retrial." *Id.* at 200 (citation omitted).  Robinson argues that *Jackson* is distinguishable from the facts of this case.  Regardless of whether the judge correctly applied *Jackson* to Andrews' proposed testimony, however, it is clear the court was relying upon an interpretation of case law rather than any personal animus toward Robinson in making its ruling.  We conclude Robinson has failed to overcome the presumption that the judge acted impartially.

## III.  Interest of justice

¶20    We will review a circuit court's denial of a new trial in the interest of justice under the erroneous exercise of discretion standard, upholding the court's decision "unless it can be said that no reasonable judge, acting on the same facts and underlying law, could reach the same conclusion." *State v. Jeske*, 197 Wis. 2d 905, 913, 541 N.W.2d 225 (Ct. App. 1995).  This court also possesses its own independent authority to grant a new trial in the interest of justice. WIS. STAT. § 752.35 (2017-18).  Here, Robinson appears to seek both review of the circuit court's decision and de novo consideration by this court of his claim for a new trial in the interest of justice.

¶21    The interest of justice may warrant a new trial when the real controversy has not been fully tried or when there has been a miscarriage of

justice. *State v. Harp*, 161 Wis. 2d 773, 779, 469 N.W.2d 210 (Ct. App. 1991). In order to establish that the real controversy has not been fully tried, a party must show "that the jury was precluded from considering 'important testimony that bore on an important issue' or that certain evidence which was improperly received 'clouded a crucial issue' in the case." *State v. Darcy N.K.*, 218 Wis. 2d 640, 667, 581 N.W.2d 567 (Ct. App. 1998) (citation omitted). To establish a miscarriage of justice, there must be a "substantial degree of probability that a new trial would produce a different result." *Id.* (citation omitted).

¶22 Robinson argues that his counsel's failure to call Craven and Andrews resulted in a miscarriage of justice. However, combining meritless claims does not create a winning claim. Zero plus zero remains zero. *Mentek v. State*, 71 Wis. 2d 799, 809, 238 N.W.2d 752 (1976). We conclude the circuit court acted within its discretion by denying Robinson's claim for a new trial in the interest of justice, and we likewise decline to invoke our own authority to order a new trial.

*By the Court.*—Judgment and orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

9