COURT OF APPEALS
DECISION
DATED AND FILED

September 29, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP637-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2016CF660

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

JEREMY L. RIGELSKY,

  DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for La Crosse County: GLORIA L. DOYLE, Judge. *Affirmed*.

Before Fitzpatrick, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Jeremy Rigelsky appeals a judgment of conviction and an order that denied Rigelsky's postconviction motion without a hearing.

Rigelsky argues that he is entitled to a hearing on his motion for plea withdrawal because he presented the following newly discovered evidence: (1) the shooting victim's recantation of his identification of Rigelsky as the shooter; and (2) a statement by an alibi witness that Rigelsky was with her at the time of the shooting. For the reasons set forth in this opinion, we conclude that the circuit court properly exercised its discretion by denying Rigelsky's postconviction motion without a hearing. We affirm.

¶2 According to the criminal complaint, police responded to reports of shots fired in La Crosse and made contact with three individuals: J.J.P., A.M.K., and M.S. J.J.P. had been shot in the leg. A.M.K. and M.S. both told police that they had been in a car with J.J.P. when Rigelsky drove up next to them and shot into their vehicle, striking J.J.P. J.J.P. initially stated to police that he was in the vehicle with A.M.K. and M.S. and that Rigelsky pulled up next to them and shot three times into the vehicle. However, J.J.P. then provided conflicting information to police, telling police that: he did not recognize the shooter; he could not be positive that it was Rigelsky who had shot him; and he had not seen the vehicle that the shooter was in.

¶3 Rigelsky was charged with multiple counts based on the shooting. Pursuant to a plea agreement, Rigelsky pled no-contest to two counts of first-degree recklessly endangering safety and one count of felon in possession of a firearm.

¶4 After sentencing, Rigelsky moved to withdraw his plea based on purported newly discovered evidence.[1] He argued that J.J.P. had recanted his identification of Rigelsky as the shooter. In support, Rigelsky provided a statement by J.J.P. that: he could not recall what happened when he was shot; it was "extremely probable" that he lied to police due to "the stress of the situation and the drugs I was on"; any statement he made at the time was just repeating what M.S. told him; and M.S. "was yelling at me and telling me what happened and he kept threatening me."

¶5 Rigelsky argued that the recantation was supported by the other newly discovered evidence of the alibi statement of Jessica Beck that Rigelsky had spent the evening of the shooting with her, but that Beck had failed to come forward with that information because Beck was hiding her relationship with Rigelsky from her husband. He also argued that the recantation was bolstered by the previously provided statements by three individuals that they heard A.M.K., M.S., and J.J.P. admit that they falsely accused Rigelsky of the shooting so that they would not have to repay money they owed him. The circuit court denied Rigelsky's newly discovered evidence claim without a hearing. Rigelsky appeals.

¶6 "After sentencing, a defendant who seeks to withdraw a guilty or no contest plea carries the heavy burden of establishing, by clear and convincing evidence, that the trial court should permit the defendant to withdraw the plea to correct a 'manifest injustice.'" *State v. Krieger*, 163 Wis. 2d 241, 249, 471 N.W.2d 599 (Ct. App. 1991) (quoted source omitted). "Newly discovered

---

[1] Rigelsky also argued that he was entitled to plea withdrawal based on a plea colloquy defect and ineffective assistance of counsel. However, Rigelsky does not pursue those arguments on appeal.

evidence may be sufficient to establish that a manifest injustice has occurred." *State v. McCallum*, 208 Wis. 2d 463, ¶16, 561 N.W.2d 707 (1997).

¶7      To establish that newly discovered evidence warrants plea withdrawal, "the defendant must prove, by clear and convincing evidence, that: (1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative." *See State v. Armstrong*, 2005 WI 119, ¶161, 283 Wis. 2d 639, 700 N.W.2d 98 (quoted source omitted).  If all four criteria are met, "the circuit court must determine whether a reasonable probability exists that a different result would be reached in a trial.  Finally, when the newly discovered evidence is a witness's recantation, … the recantation must be corroborated by other newly discovered evidence." *McCallum*, 208 Wis. 2d 463, ¶16.

¶8      Here, as in many recantation cases, our analysis focuses on whether the recantation was sufficiently corroborated.[2]  *State v. Terrance J.W.*, 202 Wis. 2d 496, 501, 550 N.W.2d 445 (Ct. App. 1996) ("[A] recantation will generally meet the first four criteria ....  The determinative factors to be considered are whether it is reasonably probable that a different result would be reached at a new

---

[2] The State argues that we should not consider the witness statements because those were not notarized.  We decline to consider that argument because it was raised for the first time on appeal.  *See State v. Hendricks*, 2018 WI 15, ¶32, 379 Wis. 2d 549, 906 N.W.2d 666.

Additionally, we assume, for the sake of argument in this opinion, that J.J.P.'s statement that he does not recall the events of the shooting qualifies as a "recantation" of his prior statements to police.  We note, however, that J.J.P.'s statements to police included that Rigelsky was the shooter, that J.J.P. could not identify the shooter, and that J.J.P. now asserts only that he cannot recall the events one way or another.

trial and whether the recantation is sufficiently corroborated by other newly discovered evidence.").

¶9 "Corroboration requires newly discovered evidence of both: (1) a feasible motive for the initial false statement; and (2) circumstantial guarantees of the trustworthiness of the recantation." *State v. McAlister*, 2018 WI 34, ¶58, 380 Wis. 2d 684, 911 N.W.2d 77. We conclude that J.J.P.'s recantation was not corroborated by newly discovered evidence of circumstantial guarantees of trustworthiness. We therefore do not address whether the recantation was corroborated by newly discovered evidence of a feasible motive for J.J.P.'s initial false accusation. *See id.* (corroboration of newly discovered recantation requires newly discovered evidence of *both* feasible motive *and* circumstantial guarantees of trustworthiness).

¶10 Rigelsky contends that J.J.P.'s recantation is corroborated by the newly discovered evidence of Beck's statement that Rigelsky was with her at the time of the shooting. He contends that the new alibi provides circumstantial guarantees of the trustworthiness of J.J.P.'s recantation of his statement identifying Rigelsky as the shooter. Rigelsky argues that Beck's testimony is itself newly discovered evidence because: (1) Beck only came forward with the alibi testimony after Rigelsky's conviction; (2) there was no way for Rigelsky to obtain the testimony sooner because Beck was unwilling to provide the alibi testimony until now; (3) the alibi testimony is material to Rigelsky's guilt or innocence; and (4) the testimony is not cumulative to any other evidence. However, because Rigelsky would have been aware when he entered his plea that he was with Beck at the time of the shooting, and thus that Beck could have provided alibi testimony, that evidence is not newly discovered. *See State v. Jackson*, 188 Wis. 2d 187, 198-99, 525 N.W.2d 739 (Ct. App. 1994) (rejecting the

argument that "[i]n order for a party to have knowledge of evidence, [it] must not only be aware of it, but also be able to use it," and that "there is a distinction between newly *discovered* evidence that was unknown at the time of trial and newly *available* evidence that was known to the defense, but unavailable because of the co-defendant's refusal to testify"). Because Beck's testimony is not newly discovered, it is not corroboration. *See **McAlister***, 380 Wis. 2d 684, ¶58.

¶11 Rigelsky also contends that there are sufficient guarantees of trustworthiness provided by the statements by three individuals that they heard J.J.P., A.M.K., and M.S. admit that they falsely accused Rigelsky to avoid their debt to him. However, Rigelsky also asserts that all three statements were already in his trial counsel's file before Rigelsky entered his plea. Because the pretrial statements are not newly discovered, those do not constitute corroboration. *See **id.***

¶12 Rigelsky contends, however, that J.J.P.'s recantation is analogous to the victim recantation in *McCallum*, which our supreme court found sufficiently corroborated. He argues that in *McCallum*, as here, the defendant was aware of the facts that corroborated the recantation at the time the defendant entered his plea. Rigelsky argues that, as in *McCallum*, facts that were known to him at the time he entered his plea are sufficient to corroborate the recantation. We are not persuaded.

¶13 In *McCallum*, "[t]he prosecution was based solely on [the victim's] uncorroborated testimony." *McCallum*, 208 Wis. 2d 463, ¶1. When McCallum moved to withdraw his plea based on the victim's recantation, the supreme court noted that "the difficulty in this kind of case is manifest: How can a defendant corroborate the recantation of an accusation that involves solely the credibility of the complainant, inasmuch as there is no physical evidence and no witness." *Id.*,

¶23. Our supreme court concluded that, under the circumstances and for the following reasons, the victim's recantation contained circumstantial guarantees of trustworthiness. *Id.*, ¶26.

¶14 First, the recantation was internally consistent: the victim stated that she falsely accused McCallum, who was dating her mother, of sexual contact because she hoped that her parents would reconcile; she blamed McCallum for her parent's divorce and resented him for disciplining her; she knew that her friend's brother had to move out of the house when he was accused of sexually assaulting his sister; and she came forward with her recantation because she did not believe McCallum should have been convicted of something he did not do. *Id.*, ¶¶7, 26. Second, the recantation was consistent with the circumstances at the time of the initial allegation: that the victim's parents were in the process of divorcing, and McCallum had disciplined the victim for her misconduct involving school truancy, coming home late, and not observing rules of the house. *Id.*, ¶26. Finally, the victim was advised at the time of the recantation that she faced criminal consequences for the initial false accusation. *Id.* The court also said that the "newly discovered evidence requirement is met inasmuch as the motives for the initial accusation were unknown to the trier of fact at the time of trial." *Id.*

¶15 Here, in contrast to *McCallum*, Rigelsky's convictions for first-degree recklessly endangering safety and possession of a firearm by a felon did not turn solely on the credibility of a single complainant who made an accusation in the absence of physical evidence and without any witnesses. Two other witnesses—A.M.K. and M.S.—identified Rigelsky as the shooter; J.J.P. had been shot in the leg; bullet holes were identified outside the vehicle that J.J.P., A.M.K., and M.S. said they were traveling in at the time of the shooting; and a firearm was located under Rigelsky's seat in a vehicle when he was arrested.

¶16 Additionally, the circumstantial guarantees of trustworthiness present in *McCallum* are absent here. First, J.J.P.'s current statement is not internally consistent. J.J.P. first states that he does not recall the events of the evening of the shooting due to his drug use. However, he then states that: he remembers that he was in M.S.'s vehicle using methamphetamines; they drove over a bridge; he heard gunshots; he felt the gunshot in his leg; M.S. and A.M.K. were screaming; they went to a Festival Foods parking lot and M.S. was screaming at him, telling him what happened and threatening him; and he then went into the Festival Foods and was taken to the hospital in an ambulance. The recantation does not provide a reason for the false accusation beyond a vague statement that M.S. was "threatening" J.J.P. Second, J.J.P.'s current claim not to recall the events surrounding the shooting is not consistent with his ability to provide details to police at the time of the initial allegation. Finally, J.J.P. does not state that he understands that he can face criminal consequences for his initial false accusation. Thus, the recantation here, unlike in *McCallum*, lacks sufficient corroboration.

¶17 Rigelsky also argues that Beck's alibi testimony, by itself, constitutes newly discovered evidence that entitles Rigelsky to a new trial. As explained above, however, we conclude that Beck's testimony does not constitute newly discovered evidence. We reject this argument on that basis. We conclude that the circuit court properly exercised its discretion by denying Rigelsky's postconviction motion without a hearing. *See McAlister*, 380 Wis. 2d 684, ¶63.

¶18 For the foregoing reasons, the judgment and order of the circuit court are affirmed.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).